UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21780-Civ-SEITZ
(09-20345-Cr-SEITZ)
MAGISTRATE JUDGE P.A. WHITE

BUD PRATT WILLIAMS,                    :

        Movant,                       :

vs.                                    :        **REPORT OF MAGISTRATE JUDGE**
                                                **FOLLOWING EVIDENTIARY HEARING**
UNITED STATES OF AMERICA,               :

        Respondent.                   :

_____


I.   Introduction


    Bud Pratt Williams has filed a pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and sentences for conspiracy to possess with intent to distribute methylenedioxymethamphetaine ("MDMA") a/k/a ecstacy, possession with intent to distribute MDMA, and attempt to possess with intent to distribute a mixture and substance containing a detectable amount of MDMA entered following a jury verdict in case no. 09-20345-Cr-Seitz.

    This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts.

    The court has reviewed the movant's initial motion (Cv-DE#1) with supporting memorandum (Cv-DE#5), attached affidavits and exhibits (Cv-DE#4), as well as, the multiple supplements/amendments thereto (Cv-DE#10,24,43), the government's response with attached exhibits (Cv-DE#16) to this court's order to show cause, the

movant's traverse (Cv-DE#22), the Presentence Investigation Report ("PSI"), the Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file.

This *pro se*, litigious movant has filed numerous pleadings, including an initial motion, a supporting memorandum, multiple amendments/supplements most of which exceed the Local Rules 20-page limit.[1] These documents are not only lengthy, but also difficult to decipher, as the arguments are often duplicated, written in narrative form, and contain a diatribe of complaints against counsel. This court, however, recognizing that the movant is *pro se,* has afforded the movant liberal construction pursuant to Haines v. Kerner, 404 U.S. 419 (1972). As can best be discerned, the movant initially identifies 28 grounds for relief.[2] Recently, he has filed yet another amendment adding an additional claim challenging counsel's effectiveness during his §2255 proceeding. (Cv-DE#43). For purposes of judicial clarity, each argument raised will not be itemized until the discussion portion of this Report. It is noted, however, that the recurring theme throughout movant's filings appears to be his apparent discontent with each and every attorney who has represented movant throughout all stages of his criminal proceeding, and this habeas proceeding.

Although at first blush, some of his claims do not appear to challenge counsel's effectiveness, a recurring theme subsumed within the claims suggest that one of his attorneys, during

---

[1] The movant is cautioned that any arguments not raised by him before the undersigned cannot be raised for the first time in objections to a Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

[2] The claims are numbered as they appear in the movant's numerous pleadings.

pretrial, trial, sentencing, appeal, or collaterally were either ineffective for failing to pursue and/or preserve the issue, and then present it on appeal and in this collateral proceeding. It is true that a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue.[3] United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986).

As will be discussed in detail below, movant cannot prevail on any of the claims presented. Consequently, as to those claims that could have been, but were not raised on direct appeal, movant cannot satisfy Strickland's standard. As a result, movant cannot demonstrate cause or prejudice arising from the procedural default. Consequently, these claims are procedurally barred here.

II. Factual Background and Procedural History

For an appreciation of this case and the multitude of claims raised herein, a full review of the procedural history and facts underlying the criminal convictions is essential.

A. Facts of the Offenses

---

[3]There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 movant demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994).

The relevant facts adduced at trial, reveal as follows. On February 26, 2009, a confidential informant ("CI"), working at the direction and under the supervision of agents with the Drug Enforcement Administration ("DEA"), obtained a one-pill sample of purported ecstasy ("MDMA") from movant's codefendant, Nehgui Cox ("Cox"). (Cr-DE#172:70-71). The meeting between the CI and Cox took place at Cox's residence in Florida City. (Cr-DE#172:70,144). Lab testing would later reveal that the pill was actually BZP. (PSI ¶4). On March 11, 2009, the CI, along with undercover Task Force Officer Rolando Rios ("Officer Rios"), next purchased 500 pills of purported MDMA from Cox for $3,000. (Cr-DE#160:73; Cr-DE#172:75-78). The purchase took place at a convenience store in Florida City. (Cr-DE#172:75-77,146). Once again, lab testing would later reveal that the pills were BZP. (PSI ¶5).

On March 19, 2009, the CI and Officer Rios met with Cox for the purpose of purchasing an additional 1,000 MDMA pills. (Cr-DE#172:80-87). That day, there were numerous calls between the CI, Cox, and movant. Specifically, prior to the meeting, at 1:47 p.m., there was a 1 minute, 46 second call between the CI's phone and Cox's phone. (Cr-DE#160:44). At 1:51 p.m., there was a 25 second call between those same two phones (Cr-DE#160:44). Immediately after that call, at 1:52 p.m., Cox' phone activated the voice mail on movant's phone. (Cr-DE#160:44-45). Approximately one minute later, movant's phone connected with Cox' phone for 55 seconds. (Id.). At 2:03 p.m., Cox' phone connected with movant's phone for 44 seconds. (Cr-DE#160:45). Approximately one minute after that call, Cox' phone had a 53 second connection with the CI's phone. (Cr-DE#160:45). Seconds later, Cox had a 44 second call with movant's phone. (Cr-DE#160:45). Meanwhile, just over a minute later, movant's phone connected with Morris Henderson's phone. (Cr-DE#160:45-46). Phone calls between the CI and Cox, Cox and movant,

4

and movant and Henderson continued until 3:36 p.m. (Cr-DE#160:46-49). There were a total of 27 connections between these four phones over a 1 hour and 49-minute time period. (Cr-DE#160:69).

During one of these calls, Cox changed the location of his planned meeting with the CI from Florida City to North Miami. (Cr-DE#172:81). Specifically, Cox and the CI agreed to meet at a Walgreens in the vicinity of 125th Street because Cox needed to "ride-over to 125th and pick them up" in advance of the planned drug deal. (Cr-DE#160:78-79). Cox went on to tell the CI that he would call him back as "[s]oon as I have them in my hand...." (Cr-DE#160:78).

Cox arrived at the Walgreens as the passenger in his own vehicle, which was driven by an unidentified individual. (Cr-DE#172:89-90). Cox got out of his vehicle, walked to the corner, and made a cellular telephone call. (Cr-DE#160:99; Cr-DE#172:90). Shortly thereafter, movant, driving a silver Altima, registered to a female on 125th Street, arrived to pick up Cox. (Cr-DE#172:90; Cr-DE#173:21). Movant then drove west on 119th Street, made a right-hand turn on 27th Court, and then came up an alleyway, entering the parking lot of the Walgreens from the rear. (Cr-DE#172:90). Movant parked, and then Cox exited the vehicle, entered Officer Rios' vehicle, and sold the CI and Officer Rios 1,000 MDMA pills for $5,000. (Cr-DE#172:90).

Once the transaction was complete, Cox reentered the passenger-side of the vehicle driven by movant, at which point movant drove Cox to a nearby BP service station. (Cr-DE#172:90). After spending "quite some time" at the service station, movant next drove Cox back to the Walgreens. (Cr-DE#172:90). Cox then

entered the vehicle in which he had originally arrived, and Cox and movant departed the area in their separate vehicles. (Cr-DE#172:90-91). After dropping Cox at the Walgreens, movant drove to Henderson's residence on Northwest 104th Street. (Cr-DE#172:91). Movant then traveled to his girlfriend's residence on Northwest 125th Street. (Cr-DE#161:13; Cr-DE#172:100).

On April 6, 2009, at the instruction of law enforcement officers, the CI called Cox and made arrangements to purchase 4,000 MDMA pills for $20,000. (Cr-DE#172:103). Originally, the 4,000-pill transaction was set to take place at the same Walgreens as the March 19, 2009 meeting. (Cr-DE#172:158). However, on April 8, 2009, the date of the planned transaction, Cox called the CI and moved the meeting to a Sam's Club, in Sunrise, Florida, across from Sawgrass Mills, because the pills were coming from up north. (Cr-DE#172:104,158).

On April 8, 2009, in advance of that meeting, the CI's phone had a 1 minute, 20 second connection with Cox' phone at 10:14 a.m. (Cr-DE#160:49). Thereafter, at 10:45 a.m., the movant's phone had a 10 minute, 2 second connection with Cox' phone. (Cr-DE#160:49). Then, at 12:38 p.m., the CI phone activated the voicemail of Cox' phone. (Cr-DE#160:50). The CI phone then connected with Cox' phone for 2 minutes and 2 seconds at 12:43 p.m. (Cr-DE#160:50). Immediately thereafter, at 12:45 p.m., Cox' phone connected with movant's phone for 1 minute and 33 seconds (Cr-DE#160:50). Again, at 12:46 p.m., Cox' phone connected with the CI's phone for 39 seconds. (Cr-DE#160:50-51). Next, at 12:56 p.m., movant's phone had a 2 minute, 14 second connection with the Henderson phone that was a voicemail activation. (Cr-DE#160:51). Phone calls between the CI and Cox, Cox and Williams, and Williams and Henderson continued until 4:26 p.m. (Cr-DE#160:51-56). There were a total of 40

connections between these four phones over that 6 hour and 12-minute time period. (Cr-DE#160:69).

Meanwhile, on April 8th, 2009, Cox arrived at the Sam's Club in a white Ford Expedition procured by movant. (Cr-DE#172:108,162-63). Cox was seated in the back passenger seat of the vehicle, along with Tedrick Cunningham. (Cr-DE#172:108-09). The vehicle was driven by Henderson, and movant was seated in the front, passenger seat. (Cr-DE#172:108). Once on the scene, Cox exited the Expedition and then entered an undercover law enforcement vehicle, occupied by the CS and Special Agent Shaun Ziadie, acting in an undercover capacity ("UC"), as a drug dealer. (Cr-DE#172:108). Eventually, when the Expedition began moving out of the area, law enforcement officers stopped the vehicle, arresting all four occupants at approximately 4:30 p.m. (Cr-DE#160:56; Cr-DE#172:108-10). Recovered from the rear of the vehicle was a brick of narcotics cutting agent, or "cut."[4] (Cr-DE#161:81-82). Also recovered, under a basket in the center console of the Expedition, was a loaded .40 caliber Smith and Wesson revolver. (Cr-DE#172:118, 161). No MDMA pills, however, were found in the vehicle. (Cr-DE#172:160).

Following his arrest, movant was initially held in a cell at the High Intensity Drug Trafficking Area ("HIDTA") Taskforce Office. (Cr-DE#173:24). While movant was in his holding cell, DEA Special Agent Kevin Bobbitt ("Agent Bobbitt"), the lead agent in this case (Cr-DE#172:64), overheard him say "hey, cuz, what they were looking for got away. They jumped too soon." (Cr-DE#173:24-25).

Later, movant was transported to, and then housed at, the

---

[4] "Cut" is a substance commonly used by drug dealers to dilute pure cocaine. See United States v. Williams, 410 Fed.Appx. 272, 274 n.1 (11th Cir. 2011).

Federal Detention Center ("FDC") in Miami. (Cr-DE#160:185). While at the FDC, movant was assigned to the same housing unit as Donovan Jonas. (Cr-DE#160:185). Jonas, under the alias Marcus Crevelle, was in prison there, having been previously convicted for illegally importing cocaine into the United States. (Cr-DE#160:176-77). As a result, Jonas was sentenced to 33 months in prison. (Cr-DE#160:177). After serving approximately 19 months of that sentence, Jonas was released on supervised release. (Cr-DE#160:179). Thereafter, Jonas' probation officer learned of his true identity. (Cr-DE#160:182). Following this discovery, the district court revoked Jonas' supervised release and sentenced him to an additional 16 months of imprisonment. (Cr-DE#160:183). Jonas was serving the 16-month sentence when he met movant.(Cr-DE#160:184). Jonas testified at trial that Movant admitted to him that he had been involved in the narcotics transactions of March 19, 2009 and April 8, 2009. (Cr-DE#161:10-27).

Movant testified on his own behalf at trial. He denied knowledge of or involvement in the narcotics transactions of March 19, 2009 and April 8, 2009. According to movant, the numerous telephone calls between himself and Cox, on March 19, 2009, concerned money Cox owed movant for a watch. (Cr-DE#162:14). Movant testified that on March 19, 2009 he never saw Cox with MDMA, did not discuss narcotics with Cox, and was not part of a narcotics transaction. (Cr-DE#162:18-19). Movant further testified that on April 8, 2009 he provided Cox with a ride to the Sam's Club because Cox's vehicle was "messed up" and Cox needed to be dropped off so that he could take a boat ride to the Bahamas. (Cr-DE#162:20-23). Movant denied knowing or understanding that a narcotics transaction was to take place that day. (Cr-DE#162:24). Movant further testified he was unaware of the existence of either the cut or the gun recovered from the Expedition prior to his arrest. (Cr-

DE#162:24-25).

B.   <u>Indictment, Pre-trial Proceedings, Conviction,<br>Sentencing, and Direct Appeal</u>

On April 21, 2009, an Indictment was returned charging Movant and his co-defendant, Nehgui Cox ("Cox"), with violation of federal laws. As to the movant, the Indictment specifically charged him with conspiracy to possess with the intent to distribute 3, 4-Methylenedioxymethamphetamine ("MDMA"), a/k/a ecstacy, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(C) and 846 (Count 1), possession with intent to distribute MDMA, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count 4), and attempt to possess with intent to distribute a mixture and substance containing a detectable amount of MDMA, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count 5). (Cr-DE#17).

Prior to trial, the government filed a <u>Fed.R.Evid</u>. 404(b)[5] notice of intent to use movant's prior convictions for possession of cocaine and marijuana, as well as, for cocaine trafficking to prove movant's intent to commit the charged offenses, and to show that the commission of such was not the result of any mistake or accident. (Cr-DE#39; Cv-DE#16:Ex.B). The Government further gave notice of its intent to use as evidence several plastic bags of marijuana and what appeared to be a one-half kilogram of cocaine discovered in the Ford Expedition movant and his codefendant Cox were riding in at the time of their arrests. (Id.).

---

[5]Pursuant to <u>Fed.R.Evid</u>. 404(b), evidence of a prior bad act is not admissible to prove action in conformity with the criminal offense, but may be admissible for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident.

Movant filed a motion to sever his trial from that of his codefendant on the grounds that if the case were severed, Cox would testify as an exculpatory witness at trial. (Cr-DE#51). In support thereof, movant attached an affidavit executed by Cox, effectively stating that movant had no knowledge concerning the MDMA transaction they were consummating at the time of their arrests. (Cr-DE#51; Cv-DE#16:Ex.C).

Thereafter, the government filed a second Rule 404(b) notice of intent to rely upon evidence that movant used the telephone at the local Federal Detention Center ("FDC") to conduct narcotics transactions while incarcerated and pending trial on the criminal charges under attack here, and to further introduce as direct evidence that movant either intimidated Cox and/or agreed to pay Cox money in exchange for his executing the exculpatory affidavit. (Cr-DE#51). It should be noted that on June 23, 2009, before movant's trial, codefendant Cox pled guilty to Count 1 of the Indictment. (Cr-DE#61).

On June 25, 2009, in accordance with the requirements under 21 U.S.C. §851(a), the government filed an information seeking to enhance movant's sentence if convicted at trial, based upon his prior conviction for cocaine trafficking. (Cr-DE#64; Cv-DE#16:Ex.E). Movant then proceeded to trial, where he was found guilty as charged, following a jury verdict. (Cr-DE#155:19).

Before sentencing, a PSI was prepared which reveals as follows. First, the PSI grouped the counts of conviction together pursuant to U.S.S.G. §3D1.2(d), because the offense level is determined largely on the basis of the quantity of drugs involved. (PSI ¶25). The base offense level was thus set at 28, after determining, pursuant to its marijuana equivalency, that the

quantity of drugs involved at least 400 kilograms, but less than, 700 kilograms of marijuana. (PSI ¶26). The base offense level was then increased four levels because a dangerous weapon was possessed and for obstruction of justice,[6] resulting in an adjusted offense level 32. (PSI ¶¶27,30-31). Since movant was considered a career offender, his guideline range did not change, remaining at a level 32, because the statutory maximum for the offenses was 20 years. (PSI ¶32). The movant's criminal history category was set at a category VI given his status as a career offender. (PSI ¶44).

Statutorily, movant faced a term of 0 to 20 years in prison as to each offense of conviction for violation of 21 U.S.C. §841(b)(1)(C). (PSI ¶73). Based on a total offense level 32 and criminal history category VI, movant's guideline range was set at 210 to 262 months in prison. (PSI ¶74). However, pursuant to U.S.S.G. §5G1.2(d), if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. (PSI ¶74).

On December 12, 2009, movant was sentenced to a total term of 235 months in prison, which was a high-end guideline sentence, but without application of the career offender enhancement. (Cr-DE#156:64; Cr-DE#34; Cv-DE#16:Ex.J).

---

[6]The government filed objections to the PSI, because it initially did not contain an enhancement for obstruction of justice. As a result of the objections, an Addendum was prepared and the PSI amended to reflect a 2-level increase to the base offense level for obstruction of justice.

Movant appealed, raising the following grounds for relief:[7]

1.  There is insufficient evidence to establish that defendant was part of a criminal conspiracy formed to possess and distribute MDMA.

2.  The government improperly vouched for witness Donovan Jonas' testimony with evidence not admitted at trial.

3.  The trial court erred in denying, without a hearing, defendant's motion for new trial which was based on affidavits establishing that Jonas confessed that he fabricated his trial testimony.

On January 21, 2011, the Eleventh Circuit Court of Appeals per curiam affirmed the movant's convictions and sentences in a written, but unpublished opinion. United States v. Williams, 410 Fed.Appx. 272 (11th Cir. 2011); (Cr-DE#201). Certiorari review was denied on May 16, 2011. Williams v. United States, __ U.S. __, 131 S.Ct. 2474, 179 L.Ed.2d 1232 (2011). Thus, for purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final at the latest on May 16, 2011, when certiorari review was denied by the U.S. Supreme Court.[8]

---

[7]The claims are gleaned from movant's initial brief on appeal, which can be found on Westlaw, a legal research database, at United States v. Williams, 2010 WL 5650461 (11th Cir. Aug. 3, 2010), as well as, from the appellate opinion affirming movant's judgment of conviction. See United States v. Williams, 410 Fed.Appx. 272 (11th Cir. 2011)(unpublished); (Cr-DE#201).

[8]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

Just thirteen days shy of the expiration of the one-year federal limitations period, movant returned to this court filing the instant motion to vacate pursuant to 28 U.S.C. §2255 on May 3, 2012.[9] (Cv-DE#1). Next, movant filed a supplement to his motion on June 12, 2012, providing more factual and legal detail as to claims 10, 23, and 28 of his federal petition. (Cv-DE#10). On August 10, 2012, movant filed a second supplement in support of claim 26 of this federal petition. (Cv-DE#24). Arguably, these supplements were filed outside the federal one-year limitations period. However, pursuant to Davenport v. United States, 217 F.3d 1341 (11 Cir. 2000), because it appears that the arguments relate back to the timely filed §2255 motion, these supplements will be construed as having been timely filed. To the extent they raise new claims and/or arguments that do not relate back to the timely filed motion, for purposes of judicial economy and since movant cannot prevail on any of the claims, the undersigned has considered all arguments, and addressed, where warranted, movant's additional claims, evidence, and representations set forth therein.

Meanwhile, movant has recently filed yet a third supplement, raising for the first time in this proceeding that his counsel during his §2255 proceedings rendered ineffective assistance. (Cv-DE#43). The U.S. Supreme Court has never established a constitutional right to counsel for prisoners mounting collateral attacks upon their convictions. Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). "The right to appointed counsel extends to the first appeal of right, and no further." Finley, 481 U.S. at 555, 107 S.Ct. at 1993. In his latest amendment, movant challenges collateral counsel's effectiveness. However, such an assertion must fail. This is so because movant has

---

[9]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

13

no constitutional right to counsel in §2255 proceedings, the errors
complained of do not go to the integrity of these proceedings, and
his claims are mere attempts to present further evidence and
argument in support of the claims raised in his initial motion.
See Franqui v. Florida, 638 F.3d 1368, 1374 n.9 (11th Cir.
2011)(citing Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 166
L.Ed.2d 924 (2007), for the proposition that a petitioner in a
federal habeas proceeding has no constitutional right to the
effective assistance of counsel); see also, Henderson v. Campbell,
353 F.3d 880, 892 (11th Cir. 2003)(§2254 petitioner does not have
a constitutional right to counsel). As a result, the movant cannot
claim that he was denied effective assistance of counsel in a
post-conviction proceeding, such as this one. See Coleman v.
Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640
(1991) (holding that a §2254 petitioner cannot demonstrate cause
for procedurally defaulting his claims by relying on
post-conviction counsel's error); see also, Hooks v. Wainwright,
775 F.2d 1433 (11th Cir. 1985). In Hooks, the court invalidated a
district court order which required that "any Florida library plan,
devised to ensure constitutional access to the courts by state
inmates, must include a provision for attorney assistance."

    As previously noted, since Hooks, the Eleventh Circuit has
consistently held that there is no federal constitutional right to
counsel in post conviction proceedings. Arthur v. Allen, 452 F.3d
1234, 1249 (11th Cir. 2006), modified on reh'g, 459 F.3d 1310 (11th
Cir. 2006); Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir.
2003); Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993). In
conclusion, movant is entitled to no relief by urging ineffective
assistance of counsel during the §2255 proceedings because there is
no constitutional right to the assistance of an attorney in a
prisoner mounting a collateral attack upon his conviction. Movant's

reliance on <u>Martinez v. Ryan</u>, ___ U.S. ____, 132 S.Ct. 1309 (Mar. 20, 2012) does not change this result. <u>Martinez</u> involves a state prisoner challenging the assistance of his trial counsel during his state court criminal prosecutions and is not applicable to this §2255 proceeding. <u>See</u> <u>Franqui v. Florida</u>, 638 F.3d 1368, 1374 n.9 (11th Cir. 2011)(<u>citing</u> <u>Lawrence v. Florida</u>, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), for the proposition that a petitioner in a federal habeas proceeding has no constitutional right to the effective assistance of counsel).

## III. <u>Threshold Issues-Timeliness</u>

The government rightfully does not challenge the timeliness of the movant's initial motion (Cv-DE#1) with supporting memorandum (Cv-DE#5), both of which have been timely filed, prior to the expiration of the federal one-year limitations period. <u>See</u> 28 U.S.C. §2255(f). To the extent the government argues generally that the supplement(s) thereto were not timely filed, because the arguments contained therein do not relate back to the timely filed motion, that position need not be decided as the movant is entitled to no relief in this collateral proceeding.

## IV. <u>Standard of Review</u>

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as

may appear appropriate." Id. Section 2255 relief is limited, however. To obtain relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

<u>General Legal Principles</u>

Because movant asserts in his motion to vacate that counsel rendered ineffective assistance during all stages of his criminal proceeding, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard is the same for claims challenging appellant counsel's effectiveness. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987).

To establish deficient performance, the movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute

rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313 n.12.

Thus, in assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler, 218 F.3d at 1316. Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Keeping these principles in mind, the Court must now determine whether counsel's performance was both deficient and prejudicial under Strickland. As indicated, Courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. See also

17

Chandler v. United States, 218 F.3d at 1314. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ____, ____, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). See also Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing Chandler v. United States, 218 F.3d at 1313).

As noted by the Supreme Court:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed .2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 788 (2011). See also Premo v. Moore, ___ U.S. ___, 131 S.Ct. 733, 739-740, 2011 WL 148253, *5 (2011). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong.

Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court
need not address both prongs of Strickland if the defendant makes
an insufficient showing on one of the prongs). See also Butcher v.
United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

As will be demonstrated in more detail below, the movant is
not entitled to vacatur on the claims presented.[10] When viewing the
evidence in this case in its entirety, the alleged errors raised in
this collateral proceeding, neither individually nor cumulatively,
infused the proceedings with unfairness as to deny the movant a
fundamentally trial and due process of law. The movant therefore is
not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d
699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding
that where there is no single constitutional error existing,
nothing can accumulate to the level of a constitutional violation),
overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482
(2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th
Cir. 1990)(stating that "a cumulative-error analysis aggregates

_____

[10]Briefly, the evidence against the movant was more than sufficient to
support his convictions. The movant has not shown that the result of the trial
or appeal would have been affected had counsel proceeded differently. Further,
no denial of due process has been demonstrated. To the contrary, it is clear
after independent review of the record that the movant received a fair trial, and
that no constitutional violations occurred. Consequently, he has failed to
demonstrate that he is entitled to habeas corpus relief in this collateral
proceeding.

The Eleventh Circuit has instructed courts to resolve all claims for relief
raised in a motion to vacate prior to granting or denying relief. See Clisby v.
Jones, 960 F.2d 925, 936 (11th Cir. 1992)(en banc)(involving state prisoner's 28
U.S.C. §2254 petition); see also, Rhode v. United States, 583 F.3d 1289, 1291
(11th Cir. 2009)(applying Clisby to a federal prisoner's §2255 motion). Given the
convoluted, narrative ramblings presented by movant in his numerous filings, and
in order to avoid any argument by movant that the undersigned has ignored under
Clisby any claim or argument, the undersigned wants to make clear at this
juncture that any argument or claim that has not been specifically identified in
this Report, but has been raised by movant in his motion, memorandum, supplement,
or traverse, has been considered by the undersigned and are found to be without
merit, warranting no further discussion.

only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

V.   Discussion of the Claims

A.   Hearing Claim
(Misadvice Regarding Pleading Guilty versus Trial)

In **claim 28**, movant asserts that he was denied effective assistance of counsel, where his lawyer misadvised him of the benefits of pleading guilty versus proceeding to trial. (Cv-DE#1:22-23; Cv-DE#10:4; Cv-DE#5:58). According to the movant, defense counsel advised him the government had no case, and could not use a jailhouse witness against the movant. (DE#1:22-23). Movant alleges counsel told him that if he were in movant's shoes, he would not accept a plea. (Cv-DE#5:58).

Movant maintains counsel misinformed him that he qualified for an enhanced sentence as a career offender, and had he been counseled properly, he would have pled guilty early on, thereby benefitting from a 3-level reduction for acceptance of responsibility. (Cv-DE#10:4). According to the movant, the government offered a 16-year plea because it was under the impression movant qualified for an enhanced sentence as a career offender. (Cv-DE#10:4-5). However, movant claims once it was established he did not qualify for the career offender enhancement, and having accepted the plea or otherwise pled guilty, he would have benefitted from a significantly lower sentence than that which he received after trial. (Id.).

20

He faults counsel for failing to properly investigate the case, present a viable defense, and provide him with competent advice. (<u>Id</u>.). Movant suggests counsel feared the district judge, and thus did not act in his client's best interest. (<u>Id</u>.). Movant concludes he was thus forced to proceed to trial, and then to testify on his own behalf. (Cv-DE#1:22).

### i. <u>The Law Re Advice on Plea Offers</u>

The law is clear that defense counsel has an affirmative duty under the Sixth Amendment of the U.S. Constitution to provide competent advice, and to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to an accused. <u>See</u> <u>Missouri v. Frye</u>, 2012 WL 93202 (2012); <u>Lafler v. Cooper</u>, 2012 WL 932019 (2012). The Supreme Court has indicated that an evidentiary hearing may be conducted to determine whether the movant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. <u>Lafler</u>, <u>supra</u>.

As discussed in detail below, the movant cannot prevail on this claim. Although at first blush, the movant's assertions appear to be founded on fact and logic, careful analysis reveals that what is being represented is not candid or forthright. In fact, as established at the evidentiary hearing, no plea offer was ever extended by the government. Further, regardless of whether movant reviewed all of the evidence with his privately retained counsel, Clement Dean, Esquire, prior to trial, it is the finding of the undersigned that the movant, an intelligent and involved defendant, would not have accepted any plea offer, but rather at all times insisted on litigating the charges against him. In fact, once again, at the evidentiary hearing in this proceeding, movant

maintained his innocence, and reasserts that he has been wrongfully convicted.

Notably, "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, 559 U.S. ____, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010). In the recent case of Missouri v. Frye, 566 U.S. ____, No. 10-444, ___ U.S. ___, ___, 132 S.Ct. 1399, 2012 WL 932020, *8 (Mar. 21, 2012), the Supreme Court said: "[A]s a general rule, defense counsel has the duty to communicate formal [plea] offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." If an attorney allows such an offer "to expire without advising the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance the Constitution requires." Id.

The Strickland framework applies to advice regarding whether to plead guilty. Hill v. Lockhart 474 U.S. 52, 57-59 (1985). See also Premo v. Moore, ____ U.S. ___, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011); Padilla v. Kentucky, ____ U.S. ____, 130 S.Ct. 1473, 1480-81 (2010)("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

The analysis of Strickland's performance prong is the same, but instead of focusing on the fairness of the trial, the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Thus, when an ineffective assistance of counsel claim concerns the rejection of an offered plea agreement,

the defendant "'must show that there is a reasonable probability
that, but for counsel's errors, he would ... have pleaded guilty
and would [not] have insisted on going to trial.'" <u>Coulter v.
Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995)(<u>quoting</u> <u>Hill v.
Lockhart</u>, 474 U.S. at 58, 106 S.Ct. at 370)(alterations in
original). In his filing, movant does not assert he would not have
insisted on going to trial. To the contrary, the allegations
contained in movant's initial filings suggests he would have
"considered" pleading guilty, but does not assert he would have, in
fact, done so.

Notwithstanding, it is also noted that a defendant has no
right to be offered a plea, nor is there any federal right for a
judge to accept it. <u>Missouri v. Frye</u>, 2012 WL 932020 at *10 (March
21, 2012). Notwithstanding, the Sixth Amendment right to counsel
does include effective representation during the plea negotiation
process. <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1486 (2010). A
"critical obligation of counsel [is] to advise the client of 'the
advantages and disadvantages of a plea agreement.'" <u>Padilla</u>, 130
S.Ct. at 1484 (2010) (quoting <u>Libretti v. United States</u>, 516 U.S.
29, 50-51 (1995)). "Exploring possible plea negotiations is an
important part of providing adequate representation of a criminal
client...." <u>United States v. McLain</u>, 823 F.2d 1457, 1464 (11th Cir.
1987), overruled on other grounds by <u>United States v. Watson</u>, 866
F.2d 381 (11th Cir. 1989); <u>see</u> <u>Holloway v. Arkansas</u>, 435 U.S. 475,
490 (1978) (stating joint representation of conflicting interests
is suspect because it may well preclude defense counsel from
exploring possible plea negotiations). Further, "as a general rule,
defense counsel has the duty to communicate formal offers from the
prosecution to accept a plea on terms and conditions that may be
favorable to the accused." <u>Frye</u>, 2012 WL 932020 at *8. When defense
counsel allows an offer to expire without advising the defendant or

allowing him to consider it, counsel has provided ineffective assistance. Id.

Of course, an attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible sentencing consequences. Brady v. United States, 397 U.S. 742, 756 (1970). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). When a defendant "'lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to [plead] or take his chances in court.'" Id. (quoting Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995)). See also Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ....").

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or has been rejected because of counsel's deficient advice, defendants must demonstrate:

> a reasonable probability they would have accepted the
> earlier plea offer had they been afforded effective
> assistance of counsel. Defendants must also demonstrate
> a reasonable probability the plea would have been entered
> without the prosecution canceling it or the trial court
> refusing to accept it.... [and] a reasonable probability
> that the end result of the criminal process would have
> been more favorable by reason of a plea to a lesser
> charge or a sentence of less prison time.

Id. at *9; see Lafler v. Cooper, 2012 WL 932019 at *5 (March 21, 2012) (same).

Strickland's inquiry into whether the result of the proceeding would have been different "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Id.

Further, the law is clear that counsel has a responsibility to discuss the advantages and disadvantages of a plea offer with movant so that movant can then decide whether to accept or reject such an offer. Padilla, 130 S.Ct. at 1484 (2010)(a "critical obligation of counsel [is] to advise the client of 'the advantages and disadvantages of a plea agreement.'"). Counsel's complete failure to confer with his client about the advantages and disadvantages of a plea offer just before the start of trial is deficient performance. See Padilla, 130 S.Ct. at 1418. However, that does not end the inquiry. The question then becomes whether movant can demonstrate counsel's deficiency prejudiced him.[11] Thus, movant must demonstrate: (1) there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Lafler, 2012 WL 932019.

---

[11]Although it appears that movant maintained his innocence during trial, sentencing, and appeal, this does not eliminate his ability to demonstrate prejudice here. See Lalani v. United States, 315 Fed. Appx. 858 (11th Cir. 2009) (an assertion of innocence does not preclude the movant from asserting he was prejudiced by counsel's misadvice regarding pleading guilty or pursuing a plea agreement).

The court, concerned with movant's claim that counsel failed to properly discuss a purported plea and the advantages of accepting the plea or pleading guilty to the charges, and as such, was precluded from making a knowing and intelligent decision whether to accept the plea, plead guilty, or proceed to trial, held an evidentiary hearing on June 20, 2013. At the evidentiary hearings, testimony was taken from the movant, and his privately retained criminal defense attorney, Clement R. Dean, Esquire.

## ii. Testimony at the Hearing

Attorney Clement R. Dean ("Attorney Dean") testified that he has worked mostly as a criminal defense attorney for the past 14 years. Attorney Dean explained that he was privately retained to represent the movant. Counsel explained that his goddaughter, Tahaji Smith ("Smith"), who at the time was dating the movant, went to his office to discuss movant's case and asked that he visit movant. Attorney Dean recalled doing so, visiting the movant at the local Federal Detention Center where movant was confined. At that time, counsel discussed the facts and events surrounding the charges. At the conclusion of the meeting, counsel left on a "good note," with movant indicating he was going to try to secure the funds to retain him. Days later Smith returned to his office, retaining counsel, and as a result, counsel once again visited the movant at the local detention center.

At the time, counsel recalled movant was already represented by an attorney, and, may have had even more than one other counsel prior to Attorney Dean being retained. After speaking with movant during the first visit, it was clear to Attorney Dean that movant wanted counsel to represent him. Attorney Dean believed both movant and his girlfriend wanted someone who "believed in" in movant's

case, and wanted to retain an attorney who would be willing to take the case to trial, because movant believed he had a "good case."

During his visits with the movant, Attorney Dean admitted he did not take a guideline manual with him, nor did he go over each of the applicable provisions of the U.S. sentencing guidelines with the movant. However, counsel testified that he discussed the guidelines generally with the movant, and was unequivocal that during these conversations, movant must have previously been made aware of his sentence exposure because he knew in detail and was well versed on his guideline range exposure.

Regarding the retainer for his services, counsel quoted movant $40,000 to take the case to trial. Counsel could not state whether the retainer was signed by the movant or by someone on movant's behalf. Later, counsel testified that he believes he took the retainer to the movant and that movant signed it, but he "could be wrong about that." Counsel also testified that if he had been retained to negotiate a plea, the retainer would have been significantly less. The retainer quote for trial was predicated on the time counsel was going to have to invest in order to prepare for trial, requiring him to put aside everything else in his office, concentrating solely on movant's case. Counsel opined that the fee was fair, given the research he had done and the complexity of the issues presented. During cross-examination, counsel explained he was retained approximately 3 to 4 weeks prior to the scheduled trial. He specifically recalled the district judge indicating that the case would go to trial, and no further continuances would be granted. When asked how many times he had met with movant to prepare for trial, counsel could not recall specifically, but did indicate he had met with movant "quite a few times."

Counsel denied ever agreeing to accept $7,500 as an initial retainer, and an additional $7,500 from movant upon his release. In fact, counsel recalled only receiving a total of $3,000 towards the $40,000 retainer. Counsel also remembered advising the court about this issue and movant confirming this fact during a side bar conference before a judge on a hearing on movant's motion to withdraw him as counsel.

Regarding a plea offer, counsel testified he could not specifically recall the government ever extending a plea offer or receiving an email with an attached proposed plea in movant's case. When questioned whether he had reviewed his file or PACER prior to the hearing, Attorney Dean indicated that he had not. Attorney Dean testified that approximately a week ago, he had received a motion concerning the nature of the evidentiary hearing, and based upon his review of that document, he did not think he needed his file.

Attorney Dean also explained that he did not bring a copy of his electronic file to the hearing because he had not been asked to do so. Counsel further denied ever advising movant that he was facing only 15 or 16 years in prison. Counsel could not recall discussing with movant a plea which would require cooperating with the government against movant's cousin, Maurice Henderson, who the government was investigating at the time.

Next, counsel indicated he could not recall whether he had advised movant that he had a triable case," but then he clarified, stating he believed at the time that movant had a "shot at winning," and still believes that today. Counsel could not recall, however, whether movant ever indicated a desire to plead guilty. Counsel acknowledged speaking with movant about alternatives to trial, and the fact that he would not receive points off his

guideline sentence for acceptance of responsibility points if he went to trial. If movant had asked counsel what he would do if he were in movant's position, counsel indicated he would have given movant an honest answer, but does not recall if that would have been a recommendation to take the case to trial.

The movant's testified that, at the time he met with Attorney Dean, he was represented by Attorney Allen Stewart Kaufman. When he met with Attorney Dean, movant claims counsel advised him that from review of some paperwork he had on the case, he did not feel that the government had a case against him. According to the movant, counsel's goddaughter gave him the money to retain counsel, who had represented that he was going to fight the charges. Movant testified that counsel was going to charge him a total of $15,000. He explained that counsel had agreed to be paid $7,500 up front, with the balance being paid when movant was able to "get the money." Movant understood that the remaining $7,500 balance was payable once he was freed from jail. Movant testified that his then girlfriend who was also counsel's god daughter, paid Attorney Dean an initial $3,000 retainer. After counsel was retained, movant recalled that his cousin, Maurice Henderson and others were sent home, because apparently the government had no case against them, while movant remained pretrial detained.

Regarding a plea offer, movant testified that, after a "conference hearing," counsel had indicated that the government had extended a plea offer which would result in a 15 or 16-year sentence. Movant then stated that counsel advised him against taking the plea. At that time, movant states he did not see any guideline books, but he did go through the guidelines, and figured it ended up being a 15 to 16 year sentence. Movant denied being advised by counsel as to any potential enhancements for a firearm

or obstruction of justice. When asked whether he would have accepted the plea if counsel had explained things thoroughly to him, movant stated he "probably would have." During redirect examination, movant equivocated, denying that he went through the guidelines with counsel, and also denied discussing the statutory factors to support a downward departure.

During cross-examination, movant also equivocated, denying that he had previously testified about having a conversation with counsel concerning a government plea offer. Movant also directly contradicted his initial testimony, conceding during cross-examination that, in fact, there was never a plea offer extended to him by the government. Movant attempted to explain the discrepancy in his testimony by indicating that what he, in fact, meant was that he had asked counsel about the amount of time he was facing. Movant further contradicted himself by admitting during cross-examination that he would not have pleaded guilty because he has always maintained and continues to maintain that he did not commit the charged crimes. In other words, movant continues to maintain, as he did in the criminal proceeding, that he is actually innocent. Movant explained that he would not have stated under oath that he was guilty, because that would have been a lie.

When asked why he believed he got the obstruction of justice enhancement at sentencing, movant stated it was because he testified at trial that he did not commit the crimes. Movant further denied that the enhancement was given because movant had paid codefendant Cox money to execute an exculpatory affidavit. Movant, however, could not recall whether there was a recorded conversation of him on a jail telephone discussing this fact. Movant also denied retaining Attorney Dean specifically to take the case to trial.

Movant also could not recall being advised by the district judge that if he wished to privately retain Attorney Dean, the court would not object, but cautioned him that his case was coming up for trial shortly and no continuances would be granted. He did concede that he wanted to hire Attorney Dean.

After careful consideration of the testimony of the movant in the context of this case and close observation of his demeanor, as well as careful attention to and review of the testimony of defense counsel at the evidentiary hearing, and, taking into account the respective interests of the parties in the outcome of this proceeding, the undersigned finds movant's testimony equivocal, inconsistent, and disingenuous. The undersigned therefore rejects movant's testimony insofar as it relates to any discussions with counsel about pleading guilty versus proceeding to trial, as well as, any purported misadvice regarding acceptance of a government plea offer. It is clear from movant's testimony, both in the underlying criminal case, and at this evidentiary hearing, that movant was never interested in accepting any plea offer, much less pleading guilty to the indictment because he believed he was actually innocent of the charges offenses.

While the court is not impressed with Attorney Dean's lack of preparation for this evidentiary, and his often qualified testimony regarding his recollections or lack thereof, the court finds credible counsel's testimony that movant was always interested in challenging the government's case a trial.

In conclusion, the court rejects movant's self-serving, disingenuous testimony that, but for Attorney Dean's failure to properly explain the terms of an imaginary government plea, or otherwise counsel him as to the benefits of pleading guilty as

31

charged, movant would have pleaded guilty rather than proceed to trial. In fact, even at the evidentiary hearing, movant at first stated he "probably" would have pleaded guilty, but then retracted that statement, indicating he would not have pleaded guilty because that would have been a lie. As will be recalled, movant's testimony was often contradictory and also irreconcilable with the sworn allegations as contained in his pleadings. In conclusion, the undersigned finds movant has not demonstrated that counsel was deficient, much less that he was prejudiced as to the advice provided by counsel regarding accepting a plea offer, pleading guilty or proceeding to trial. He is thus entitled to no relief on this basis.

### iii. No Contest/Alford Plea

By the movant's own admission, he willingly went to trial because he maintains he is innocent of being involved in any of the charged conduct. First, as previously narrated in this Report, movant testified he would not have pleaded guilty, even if he had been properly counseled because to do so would have been a lie. However, movant suggests that he would have been amenable to a plea of convenience, that would not require admitting his relevant conduct or guilt.

The law is clear that when a defendant attempts to plead guilty, while protesting his innocence, a trial judge may accept the plea if the defendant clearly indicates his desire to plead guilty, and a strong factual basis for the plea exists. United States v. Dykes, 244 Fed.Appx. 296, 297-298, 2007 WL 1953538, 1 (11th Cir. 2007), quoting, North Carolina v. Alford, 400 U.S. 25,

31-32, 38 (1970)[12]; <u>United States v. Gamboa</u>, 166 F.3d 1327, 1331 n.4 (11th Cir. 1999)(stating that "[a] court cannot accept a guilty plea unless it is satisfied that the conduct to which the defendant admits constitutes the offense charged"). It is well-settled, however, that a defendant has no absolute right under the United States Constitution or under <u>Fed.R.Cr.P.</u> 11 to have his guilty plea accepted by the court. <u>United States v. Gomez-Gomez</u>, 822 F.2d 1008, 1010 (11th Cir. 1987); <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971); <u>North Carolina v. Alford</u>, 400 U.S. 25, 38 n. 11 (1970). When a defendant attempts to couple a guilty plea with an assertion of facts that would negate his guilt, a judge may properly treat this assertion as a protestation of innocence. <u>United States v. Gomez-Gomez</u>, 822 F.2d at 1011. In <u>Gomez</u>, the Eleventh Circuit concluded that when a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against acceptance of the plea. <u>Id</u>. at 1011.

As evident from review of the record in the underlying criminal case, as well as, movant's own testimony at the evidentiary hearing, no showing has been made that the movant would have admitted his guilt to the charged offenses which involved pleading guilty to a conspiracy charge involving the possession with intent to distribute ecstacy, a charge of attempted possession with intent to distribute ecstacy, and possession with intent to distribute ecstacy. There is no objective evidence, other than the movant's self-serving representations in his §2255 filings, and then initially during his direct testimony that he ever intended to

---

[12]In <u>Alford</u>, the Supreme Court concluded that a district court does not err by accepting a guilty plea that is accompanied by the defendant's assertion of innocence when the defendant concludes that a guilty plea is in his best interest and there is strong evidence of guilt. <u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).

plead guilty. In fact, during cross-examination he acknowledged he would not have pleaded guilty and continues to challenge his guilt here. Therefore, the undersigned finds movant would have been unable to accept full responsibility for his conduct.

Notwithstanding, even if he had been advised by counsel that he could plead to the indictment prior to trial, no showing has been made that the court would have accepted such a plea, on the terms suggested by the movant. Even if the court could have accepted the movant's Alford plea, it was not required to do so and it was within its discretion to interpret the movant's statements as a claim of innocence. Consequently, the movant has shown neither deficient performance nor prejudice arising from counsel's failure to advise the movant regarding pleading guilty or proceeding to trial. He is thus entitled to no relief on this claim. Strickland v. Washington, 466 U.S. 668 (1984); Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987).

While a defendant's protestations of innocence before and after trial do not in and of themselves prove that a defendant would not have accepted a guilty plea if properly advised, see Lalani v. United States, 315 Fed.Appx. 858, 2009 WL 465989 (11 Cir. 2009), citing, Griffin v. United States, 330 F.3d 733, 738 (6 Cir. 2003), it is important to note that the movant steadfastly maintained his innocence as to his involvement in the charged criminal activities with cooperating codefendant Cox. Even now in this §2255 proceeding, as is evident from the claims raised herein, the movant has not admitted his guilt and continues to maintain his innocence.

The movant's postconviction assertion that he would have pled guilty to the indictment is not believable. Now serving a severe

sentence, the movant wants to go back in time and accept responsibility in the hopes of obtaining a lesser sentence. But his actions before trial and his refusal to admit guilt even now clearly demonstrate that he would not have pled guilty nor would he have admitted guilt in a change of plea proceeding. The movant decided to take his chances at trial in hopes of an acquittal and lost. The movant's claim that he would have pled guilty as charged is therefore rejected.

Accordingly, his after the fact assertions concerning his desire to plead to guilty are insufficient to establish prejudice under the Strickland standard. See Diaz, 930 F.2d at 835 ("[A]fter the fact testimony concerning [the] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the defendant] would have accepted the plea offer."). See also Doe v. United States, 2010 WL 1737606, *6-7 (S.D.Ga.2010); Scott v. United States, 325 Fed.Appx. 822, 825, 2009 WL 1143179, *2 (11 Cir. 2009).

Consequently, for this alternative basis, the movant cannot satisfy Strickland's prejudice prong, as interpreted recently by the Supreme Court, and is thus entitled to no relief on this claim. See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)("[A]fter the fact testimony concerning [the] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the defendant] would have accepted the plea offer."). See also Doe v. United States, 2010 WL 1737606, *6-7 (S.D.Ga.2010); Scott v. United States, 325 Fed.Appx. 822, 825, 2009 WL 1143179, *2 (11 Cir. 2009). In conclusion, the movant has failed to demonstrate either deficient performance or prejudice pursuant to Strickland, and is therefore entitled to no relief on these claims.

Moreover, it should also be noted, that "[A]s a matter of public policy, no court should tolerate a claim of this kind," "[N]or should such a movant find succor in claiming" as movant does here, that "my lawyer told me to lie." See Gaddis v. United States, 2009 WL 1269234, *5 (S.D. Ga. 2009)(unpublished). It is true that in criminal proceedings a defendant has "a fundamental constitutional right to testify ... at trial," but not to commit perjury. United States v. Teague, 953 F.2d 1525, 1530, 1532 (11th Cir. 1992)(en banc). In other words, "[A] defendant's right to testify does not include a right to commit perjury." United States v. Dunnigan, 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The undersigned takes no position on whether movant's testimony supports a finding of perjury. However, it is clear that movant's testimony was equivocal and also directly contradicted his voluminous filings in this proceeding.

## B.  Remaining Claims

In his remaining claims, movant challenges counsel's effectiveness during all stages of the criminal and appellate proceedings.

### i. Claims Challenging Counsel's Effectiveness Re Before, During, & After Trial

In **claims 1, 2, 4, 6, 8, 9, 13, 14, 16, 19, 24, 25, and 27**, movant challenges counsel's effectiveness before, during, and after trial.

In **claim 1**, movant asserts that was denied effective assistance of trial counsel, where his lawyer failed to investigate information provided by the movant concerning the fact that an

36

agent searched the contents of movant's cellular phone at the time
of his arrest. (Cv-DE#1:5; Cv-DE#5:1-3). Movant also suggests that
the government suborned perjury by allowing DEA Agent Bobbitt
("Agent Bobbitt") to lie in his April 2009 DEA-6 Affidavit and at
trial. (Id.). According to the movant, Agent Bobbitt had already
searched movant's phone before he applied for the search warrant,
and as such, it was impossible for Agent Bobbitt to have led the
government to the international number contained on movant's phone
before that time because he had not met jailhouse witness Jonas
until almost a month after the warrant was executed. (Id.). The
movant further alleges that the government committed prosecutorial
misconduct during opening statement and closing argument by
vouching and bolstering the credibility of their key witness,
Donovan Jonas ("Jonas"). (Cv-DE#5:1).

First, the validity of many of the arguments raised herein
were challenged on appeal following his convictions. The Court of
Appeals affirmed, finding no error. See United States v. Williams,
410 Fed.Appx. 272 (11th Cir. 2011); (Cr-DE#201). The movant has,
therefore, not demonstrated a change in circumstance, sufficient to
warrant relitigation of the claim. The presentation of the claim in
this §2255 proceeding in the guise of an ineffective assistance of
counsel claims adds nothing of substance which would justify a
different result. See Hobson v. United States, 825 F.2d 364, 366
(11th Cir. 1987)(claim raised and considered on direct appeal
precludes further review of the claim in a §2255 motion), vacated
on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211
F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d
1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313
(7th Cir. 1992), overruled on other grounds by Castellanos v.
United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United
States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final

judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.). Regardless, the allegations individually and cumulatively raised in relation to this claim do not warrant vacatur of the convictions. Consequently, no prejudice pursuant to Strickland has been established arising from counsel's failure to pursue these issues. Nevertheless, some of movant's arguments will be touched upon briefly below.

Allegations as to Jonas. Substantively, movant first suggests the government engaged in prosecutorial misconduct by unlawfully vouching for the credibility of its witness, Donovan Jonas, during opening statements and closing argument. (Cv-DE#1:5; Cv-DE#5:1-3). Movant argues the government misled the court by stating that Jonas led the government to the Bahamian number movant had recorded in his cellphones which were seized at the time of his arrest. (Id.). When the issue was raised and rejected on direct appeal, the appellate court found that while the government argued that Jonas was credible, it did not do so on the basis of the reputation of the government. United States v. Williams, 410 Fed.Appx. 272, 275 **3 (11th Cir. 2011); (Cr-DE#201).

To establish prosecutorial misconduct during opening statements and closing argument, the movant must demonstrate that the remarks were improper and that those remarks prejudicially affected his substantial rights. United States v. Iglesias, 915 F.2d 1524, 1529 (11th Cir. 1990). Improper vouching may occur in two ways: "[f]irst, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity .... [s]econdly, a prosecutor

may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony." United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)(citations omitted).

In this case, while the Government argued that Jonas's testimony was credible, it did not do so on the basis of the reputation of the Government. The Government also did not improperly vouch for Jonas's credibility by relying on evidence not before the jury. The Government's mention to the "public record" during closing argument was not improper, as the Government provided testimony as to what was included in the public record. Furthermore, the record indicates other evidence referred to by the Government was also before the jury. As such, the Government did not improperly vouch for Jonas's credibility by referring to these items. See Sims, 719 F.2d at 377.

Notwithstanding, even if the precise argument set forth in this §2255 motion was not raised on direct appeal, movant cannot prevail on this claim because he cannot establish prejudice under Strickland arising from counsel's failure to pursue this issue. Independent review of the record confirms there was more than ample evidence of movant's guilt besides Jonas' testimony. When affirming the sufficiency of the evidence on appeal, the appellate court found there was sufficient evidence of a continuing relationship between movant and Cox, and others, in which movant would supply Cox with MDMA. United States v. Williams, 410 Fed.Appx. 272 (11th Cir. 2011); (Cr-DE#201). Further, the court found that the jury was entitled to believe the phone calls between the CS and Cox, Cox and the movant, and the movant and Henderson were calls between a drug buyer, a drug seller, and the seller's supplier and ultimate source of the drugs. Id. The appellate court next determined that movant's

prior conviction for cocaine trafficking also undermined movant's arguments that he was merely present at the drug transactions, and that his presence at two consecutive drug transactions contradicted his mere presence defense, indicating he was a willing coconspirator. Id. Thus, movant cannot satisfy his burden of proof that, but for counsel's alleged deficiency, the outcome of the trial would have been favorable to the defense. In other words, no prejudice has been established under Strickland.

    Allegations as to Agent Bobbitt. Having failed to prevail on appeal on his claim that the government vouched for Jonas' credibility, alternatively the movant now seeks to attack the government, stating that it vouched for another witness' credibility, to-wit, Agent Bobbitt, during opening statements and closing argument. In order to prevail on a Giglio[13] claim, the movant must establish that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony," and that the falsehood was material. Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999)(quoting, United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995)). Under Giglio, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. (quoting, United States v. Agurs, 427 U.S. 97, 103 (1976)).

    The movant has failed to provide any objective evidence that the government suborned perjury of either Jonas or Agent Bobbitt. Notwithstanding, where a prosecutor knowingly uses perjured testimony, or failed to correct what it subsequently learned was false testimony, the falsehood is deemed to be material "if there

_____

    [13]Giglio v. United States, 405 U.S. 150, 154 (1972).

is any reasonable likelihood that the false testimony <u>could have</u> affected the judgment of the jury." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976) (emphasis added); <u>accord</u>, <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959). No such showing has been made here. Consequently, the movant cannot demonstrate prejudice stemming from counsel's alleged deficient performance in failing to pursue these nonmeritorious claims.

Under the totality of the circumstances present here, the movant has failed to establish prosecutorial misconduct. The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11 Cir. 1984).  In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert.</u> <u>denied</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11 Cir.), <u>cert. denied</u>, 485 U.S. 964 (1988). Moreover, none of the errors complained of either individually or cumulatively had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). Consequently, no prejudice has been established arising from counsel's failure to pursue this claim.

Next, movant suggests the government suborned perjury by allowing Agent Bobbitt to lie, both in his June 8, 2009 DEA-6

Affidavit of an April 2009 interview of Jonas, and then at trial. (<u>Id</u>.). The movant has attached a copy of Bobbitt's DEA-6 to his initial motion. (Cv-DE#1:Ex.D). The movant maintains the Bobbitt Affidavit omitted the material fact that Agent Bobbie had already searched the movant's phones at the time he applied for the search warrant. (Cv-DE#5:2).

Agent Bobbitt's DEA-6 Report ("Bobbitt Report") recounts information provided to him by Donavan Jonas, an inmate at the Miami Federal Detention Center, who was serving a 16-month sentence for probation violation, when he met and befriended the movant and Cox. (DE#4:Ex.A). The affidavit goes into great detail about the information Cox learned from the movant regarding the events underlying the conspiracy and leading up to the movant's arrest, as well as, movant's post-arrest procurement of a fraudulent exculpatory affidavit from Cox. The Bobbitt Report confirms Jonas hoped that, in exchange for disclosing this information to the government, the government would stop his deportation to Jamaica.

The affidavit in support of the search warrant, however, was not executed by Agent Bobbitt, but rather Special Agent Tonya R. Cook ("Agent Cook"), with the U.S. Secret Service.[14] Thus, movant's allegation to the contrary is belied by the record. In her affidavit, Agent Cook attests that she is assigned to the High Intensity Drug Trafficking Area ("HIDTA"), field division office of the Drug Enforcement Administration ("DEA"). She states she is responsible for investigating drug violations, including those involving conspiracies to possess with intent to distribute MDMA. Agent Cook also indicates that the information contained within her

---

[14]<u>See</u> Affidavit attached to Search and Seizure Warrant issued in case no. 09-2837-JJO. The court takes judicial notice of its own records. <u>See</u> <u>Fed.R.Evid.</u> 201.

affidavit is based on personal knowledge and information provided to her by others, including law enforcement personnel. Thereafter, Agent Cooke recounted the events surrounding the March 19, 2009 controlled, recorded phone call that was placed by the CS to Cox, wherein Cox advised he was going to pick up the MDMA pills at a residence located at 125th Street in Miami. During that conversation, the location for completion of the sale was established, and surveillance set up. At that time, agents observed Cox exit movant's car, walk to the UA's vehicle where he completed the 1,000 MDMA pill sale. After Cox completed the transaction, he returned to movant's vehicle, at which time they both traveled to a nearby gas station. Shortly thereafter, movant returned to the locale where the transaction had been consummated, and Cox was observed exiting movant's vehicle. Next, Agent Cook recounted the events leading up to the April 2009 transactions which culminated with the arrest of the movant and Cox. The agent further stated that a search incident to arrest revealed movant was in possession of two cellular phones. Cox was also overheard yelling to the movant that they had been set up. Once at the station, Cox gave a post-<u>Miranda</u> statement admitting to the prior drug sales, and that the drugs had been supplied to him by movant, but that he believed movant's supplier might be Henderson.

Agent Cook also recounted the events transpiring during movant's incarceration wherein information was relayed by a confidential informant ("CI") [later identified as Jonas] that had not been made public during any part of the investigation and could only have been known by the movant. As a result, Agent Cook opined the information provided by Jonas had proven to be reliable. The CI had also indicated that movant had stated he was concerned about incriminating evidence contained within his cell phones regarding the illegal drug transactions. Agent Cook concluded that, based on

43

the information obtained during the investigation, the post-arrest statements made by Cox, and the information provided by the CI, she believed that probable cause existed that the telephones contained evidence demonstration a violation of 21 U.S.C. §846.

At trial DEA Agent Bobbitt testified he was a lead agent in the case, controlling the CI, directing surveillance, and making investigative decisions. (Cr-DE#16:Ex.6:Day 2:T.65). Agent Bobbitt explained at trial that the phones were seized at the time of movant's arrest. (T.114). He then concedes he opened the phone and took down the number assigned to that phone, and then asked his analysts to get the subscriber information, as well as, toll records for the phones. (T.114). According to Agent Bobbitt, he was contacted by Jonas' defense counsel who stated that Jonas had information concerning movant's case. (T.134). He interviewed Jonas a total of three times, and during those meetings, Jonas relayed what he had learned from the movant, including the fact that movant was making phone calls from jail utilizing another inmate's pin number. (T.135-138). Further, Agent Bobbitt testified that after being advised by Jonas that movant was concerned with the text messages that were contained in the seized phones, a search warrant was obtained and executed, which corroborated the information provided by Jonas. (T.139-40,166m183). A copy of one of the text messages was introduced into evidence. (<u>Id</u>.).

During cross-examination, Agent Bobbitt acknowledged that, on March 11, 2009 when the UA made the 500 MDMA pill purchase from Cox, as far as he knew, movant was not the source of those pills. (T.166-175). The agent further confirmed that, based on his experience, it was possible for Cox to have had more than one drug supplier. (<u>Id</u>.). However, the agent did not state that movant was not the source, just that he had no knowledge at the time that he

was the source for the drugs.

It appears movant is attempting to raise a <u>Franks</u>[15] violation. Under <u>Franks</u>, a court must give a defendant a hearing to challenge evidence obtained through a search warrant when the defendant has proof that the warrant was obtained through a false affidavit. <u>Franks v. Delaware</u>, 438 U.S. at 155-56. The defendant, however, may only attack a facially sufficient affidavit supporting a search warrant if (1) it contains statements or omissions that were deliberately false or demonstrated a reckless disregard for the truth and (2) those challenged statements or omissions are essential to the Magistrate Judge's finding of probable cause. <u>United States v. Bell</u>, 2010 WL 841308 at *2 (W.D. Va. 2010)(citations omitted); <u>see also</u>, <u>United States v. Maharaj</u>, 2007 WL 2254559 at *6 (11th Cir. 1998). "'The <u>Franks</u> standard is a high one.'" <u>United States v. Nakouzi</u>, 2005 WL 3211208 at *5 (D.Conn. 2005)(<u>quoting</u> <u>Rivera v. United States</u>, 928 F.2d 592, 604 (2d Cir. 1991)). Notwithstanding, the <u>Franks</u> court emphasized that the defendant's attack must be more than conclusory and must be supported by more than a desire to cross-examine. <u>Id</u>. at 171. Rather, the defendant must make "allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." <u>Id</u>.

Negligent or innocent mistakes in a warrant application do not violate a defendant's Fourth Amendment rights. <u>See</u> <u>Maughon v. Bibb County</u>, 160 F.3d 658, 660 (11th Cir. 1998)(<i>per curiam</i>); <u>Madiwale v. Savaiko</u>, 117 F.3d 1321, 1326-27 (11th Cir. 1997); <u>Franks</u>, 438 U.S. at 171. Moreover, "'[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant.'" <u>Maharaj</u>, 2007

---

[15]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

WL 2254559 at *7 (quoting United States v. Ofshe, 817 F.2d 1508, 1513 (11th Cir. 1987)). Indeed, every fact recited in an affidavit in support of an application for a search warrant does not necessarily have to be correct, but the affidavit must be truthful in the sense that it is believed or appropriately accepted by the affiant as true. Franks, 438 U.S. at 165.

Here, the movant has not met the strict standard under Franks. That is, the movant has not made a substantial preliminary showing that either or both Agent Bobbitt and Agent Cook knowingly and intentionally made false statements in their respective Affidavits/Reports summarized above. See In the Matter of the Search of One (1) Kyocera, Metro PCS cell phone, etc., United States District Court, Southern District of Florida, case no. 09-2837-JJO; see also, DE#5:Ex.1. Even if the court disregards those portions of the affidavits/reports that the movant contends are misleading, there remains sufficient content in the affidavits to support a finding of probable cause. United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009). Moreover, allegations of deliberate or reckless misrepresentations must be accompanied by the movant's offer of proof. See United States v. Haimowitz, 706 F.2d 1549, 1556 (11th Cir. 1983). However, mere allegations of negligence or innocent mistake are insufficient under Franks. Franks, 438 U.S. at 171. Thus, any further argument in this regard must fail. Movant has not provided sufficient proof to warrant a Franks hearing, much less suppression of the search warrant. Thus, no deficient performance or prejudice has thus been established and the movant is not entitled to relief on this claim.

The movant is also entitled to no relief on this claim because the Eleventh Circuit has previously upheld searches by police officers of cell phones, including call records and text messages,

46

incident to arrest. See United States v. Finley, 477 F.3d 250, 259-60 (11th Cir. 2011). Here, seizure of the movant's cell phones were incident to his arrest, and thus the search was not unlawful. Although the search warrant as to the contents of the phones was authorized months after movant's arrest, the exclusionary rule would not apply if the government learned of the evidence through an independent source. See Segura v. United States, 468 U.S. 796, 805 (1984). Here, even assuming, without deciding, that the agent had already observed the text messages before he sought the search warrant, any illegality as to the contents of the affidavit/report in support thereof would have been cured by information provided by Jonas to Agent Bobbitt regarding movant's admissions that he was concerned about the discovery of the texts contained therein because they were incriminating. Thus, a later search, based on independent source evidence, as is the case here, cures the illegality if the agent was not prompted to seek the warrant by what he had initially observed. Murray v. United States, 487 U.S. 533, 542 (1988).

For the foregoing reasons, movant cannot demonstrate deficient performance or prejudice arising from counsel's failure to pursue the foregoing arguments raised in claim one either pretrial, at trial, post-trial, or on appeal. He is thus entitled to no relief on claim one.

Movant next faults counsel for failing to call movant's friend, an individual movant refers to as "Cuzo," to establish that Cuzo was the person who called him on the morning of April 8, 2009 from the Bahamian number, 242-466-2590, which Agent Bobbitt had seized from movant's cellular phone. (Cv-DE#5:2). First, movant does not provide any affidavit or other object evidence demonstrating that Cuzo would have been available to testify and

then testified as suggested, much less that the subject information would have resulted in a favorable defense verdict of not guilty. Such a bare and conclusory allegation warrants no relief. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Consequently, he cannot prevail on this basis, because he has not satisfied either <u>Strickland</u> prong.

Finally, as to this claim, movant also suggests counsel was ineffective for failing to move for a mistrial once the jury heard the prejudicial testimony of Agent Bobbitt. (Cv-DE#5:3). Again, for the reasons previously stated in this report, movant has failed to establish that had counsel moved for a mistrial or curative instruction on the bases proffered by movant above, that the court would have granted a mistrial. Thus, movant cannot establish prejudice under <u>Strickland</u> and is entitled to no relief on this claim.

In **claim 2**, movant asserts in his form motion that he was denied effective assistance of counsel, where his lawyer failed to contact and interview other inmates, to-wit, Larry Hunter, Derrick Miller, and Donaveon Lightbourn, who would have testified that movant did not know the government's jailhouse witness, Donovan Jonas. (Cv-DE#1:6; Cv-DE#5:3-4). In his supporting memorandum, movant states these inmates were housed in unit 9-west at the Federal Detention Center in Miami at the same time movant and Cox were there. (Cv-DE#5:3-4). Movant claims these witnesses would also have testified that Cox and Jonas were sexually involved with each other. (<u>Id</u>.). Movant maintains counsel changed strategy at the last minute, deciding not to call these witnesses so as not to "piss off" the district judge on the case. (<u>Id</u>.:4). Once again, while movant has provided other affidavits, he has failed to provide a single affidavit from the foregoing individuals confirming that

they would have been available to testify at trial and that they, in fact, would have testified as proffered. Bare and conclusory allegations of ineffective assistance of counsel which are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

Regardless, such proffered testimony would not have affected the outcome of the trial. In fact, assuming, without deciding, that the witness(es) would have been available and testified as proffered, they would have been subject to cross-examination. As such, their testimony may have resulted in evidence being heard that would inculpate, rather than exculpate the movant. Thus, the allegation, unsupported by any indicia of reliability, is also subject to summary dismissal. Machibroda, supra. Moreover, movant cannot satisfy Strickland's prejudice prong due to counsel's failure to produce these witnesses to testify at trial. This claim fails.

Moreover, while movant has made some factual allegations supportive of this claim, he has not met the threshold requirements for an evidentiary hearing on the claim because the criteria of the entitlement to an evidentiary hearing is two-fold. A movant must not only allege facts that support his claim but those facts must also entitle him to relief. Based on this criteria, no evidentiary hearing is warranted because no showing has been made that this testimony, if believed, would have resulted in a different outcome at trial, much less that the witnesses would have testified as proffered.

Nonetheless, the entitlement to an evidentiary hearing is not absolute. "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof." <u>Aron v. United States</u>, 291 F.3d 708, 715, n.6 (11th Cir. 2002). Here, movant has not properly alleged reasonably specific, non-conclusory facts as required under law which, if were true, would entitle him to relief.

In conclusion, assuming all the allegations are true, this claim warrants no relief under §2255 because movant has not provided any evidence to corroborate his allegations as to these witnesses. Movant's entire claim is based solely on his own assertions. These assertions were made in the text of pleadings filed with the Court. (Cv-DE#s1,5). Movant provided no affidavits from those specific witnesses he alleges in this claim would have testified as proffered. Therefore, the Court can only analyze the claims based on the pleadings. Having done so, the court concludes that movant cannot satisfy <u>Strickland</u>'s prejudice prong and is thus entitled to no relief on this claim. In other words, movant cannot establish that even if these witnesses had testified as proffered, that the outcome of the trial would have been favorable to the movant, resulting in an acquittal of some, if not all, charges. Thus, he cannot prevail on this claim.

In **claim 4**, movant asserts that he was denied effective assistance of trial counsel because his attorney agreed and/or otherwise stipulated with the government that it was a fact Agent

50

Bobbitt first met Jonas after movant's phone privileges were revoked.(Cv-DE#1:8; Cv-DE#5:7-9). Movant suggests that in the Bobbitt Affidavit, the agent stated his first meeting with Jonas occurred on June 5, 2009. (Id.). However, movant states his phone privileges were not revoked until June 16, 2009. (Id.). Further, movant claims he was not housed in the same unit with Jonas. (Id.). Movant maintains Agent Bobbitt gave contradictory information regarding the exact dates the agent met with Jonas and the date movant's phone privileges were taken away. (Id.). Movant maintains documents/records were "altered," to reflect his phone privileges were taken away before June 5th, 2009, when in fact, they were not revoked until June 16th, 2009. (Id.). He once again challenges the veracity of the Bobbitt Report.(Id.).

Careful review of the record reveals that the movant is either misconstruing the record and/or misquoting the record. He relies on pages 43-44 and 64-65 of the trial transcript to suggest that Agent Bobbitt lied in the Bobbitt Report wherein he narrated that he first met Jonas on June 5th, 2009. It is true that the Bobbitt Report indicates the agent interviewed Jonas on June 5th, 2009. (DE#5:Ex.D). The Bobbitt Report indicates it was prepared several days later, i.e., June 8, 2009, by Agent Bobbitt. (Id.). The cited portions of the transcript reveals that during cross-examination, Agent Bobbitt again confirmed that the first time he met Jonas was on June 5, 2009, consistent with his representations in the Bobbitt Report. (Cr-DE#173:T.43). The agent also confirmed that movant had been in custody since April 8, 2009, some two months prior to the agent's first conversation with Jonas. (Id.). Agent Bobbitt denied speaking with Jonas prior to June 5th. (Id.:44). According to Agent Bobbitt, he was not the cause of the revocation of movant's phone privileges. (Id.64). To the contrary, Agent Bobbitt testified that movant's phone privileges were taken away prior to Jonas

communicating any information to him. (Id.:64). At that point, the government offered to stipulate that movant's phone privileges had been taken away before Jonas ever met with the agent. (Id.:65). In response, movant's counsel agreed to the stipulation. (Id.). The court then instructed the jury, consistent with the stipulation, that, "[A]t the time Agent Bobbitt met with Mr. Jonas a/k/a Mr. Corvelle, Mr. Williams' [movant] phone privileges had been taken away." (Id.:65). It is thus evident that movant is confused as to what is set forth in the record, because the record, as relied upon by movant, and narrated above, does not demonstrate that the stipulation involved June 16th. Moreover, it was not error for counsel to stipulated to this fact, especially given the fact that Agent Bobbitt had already testified consistent therewith. Movant has failed to demonstrate deficient performance or prejudice in this regard, and is thus entitled to no relief on this claim.

If movant means to suggest counsel should not have agreed to that because movant wanted to challenge the date his privileges were revoked, movant has not demonstrated that such a tactic would have been effective, much less believed by the jury. Consequently, movant cannot prevail on this argument.

Next, movant claims he was not in unit 9 west by June 12, 2009, when he states the investigation commenced regarding movant's violation of his phone privileges. (Cv-DE#5:8). He states there was absolutely no way for movant to confess to Jonas the information purportedly relayed by Jonas to the government because of the tight security at the facility where they were housed. (Id.). Movant attaches as exhibits F through H, copies of the incident report that precipitated the revocation, and the inmate discipline data record, showing that the incident occurred on June 2, 2009, and on June 16, 2009, movant admitted to the charge. (DE#4:Ex.F-H). The

documents also reveal that movant was sanctioned with another 180 days of loss of phone privileges commencing June 17, 2009. (Id.). What it does not confirm or deny is whether his phone privileges were suspended pending the internal investigation which commenced on June 12th, 2009, concerning a phone call on June 2nd, 2009 made by movant using another inmates pin number. (Id.). Movant has not provided any evidence showing he did, in fact, have phone privileges on June 5th, 2009. Regardless, whether or not he had phone privileges during the relevant time period is of no consequence to whether he committed the charged offenses. Movant cannot demonstrate prejudice under Strickland because even if no stipulation had been entered into, he has not shown that this would have resulted in an acquittal at trial. To the contrary, there was more than sufficient evidence upon which the jury could convict.

Next, he claims counsel erred in failing to object to the court's jury instructions which were based on the foregoing false information. (Id.). Even if counsel had objected, no showing has been made here that the court would have sustained such an objection. Consequently, no prejudice under Strickland has been demonstrated, and movant is thus entitled to no relief on this claim.

In **claim 6**, movant asserts that he was denied effective assistance of trial counsel, who permitted, without objection, that the government vouch for the credibility of information provided by Jonas and also for bolstering Jonas' testimony.[16] (Cv-DE#1:13; Cv-DE#5:9-10). He also states counsel should not have allowed Agent Bobbitt to testify that the gun found inside the center console of

---

[16]To the extent the movant once again argues the government engaged in prosecutorial misconduct by vouching or otherwise bolstering the testimony of its witnesses, that claim warrants no relief for the same reasons previously set forth in this Report.

Henderson's truck was registered to Henderson, movant's cousin. (Cv-DE#1:13). Movant claims Agent Bobbitt testified that Jonas advised him that Henderson brought the gun inside the truck and placed it in the center console. (Id.). Movant claims he told counsel repeatedly that Henderson did not bring any firearm inside the truck. (Id.). Movant further states he had repeatedly told counsel that Henderson could not have had the firearm registered in his name because he was a convicted felon. (Cv-DE#5:10). According to the movant, Henderson denied bringing the firearm into the truck when he was interviewed by Agent Bobbitt, and attaches in support thereof, a DEA-6 Report ("April 13th Report") of that interview. (DE#4:Ex.I-April 13, 2009 Bobbitt Report). Also, movant claims counsel erred in not objecting to testimony that possession of a gun is a tool of the drug trade. (Cv-DE#1:12; Cv-DE#5:9-10).

The April 13th Report confirms Henderson was arrested along with the movant and others on April 8, 2009. (Id.). At that time, Henderson waived his rights and then denied having any knowledge of the sale of MDMA, and further denied having any knowledge of the firearm and drugs found in his car. (Id.). Henderson only conceded that he was with the movant and others at that time, and because one of the passengers needed a ride to the Sam's Club store in Sunrise, they went there, where they were then all arrested. (Id.).

It was not error for counsel to pursue the line of defense that movant suggests here. As will be recalled, at trial Agent Bobbitt testified that the gun was eventually discovered following a search by agents of the center console of the Ford Expedition used at the time the movant and his coconspirators were arrested on April 8, 2009. (Cr-DE#161:84; Cr-DE#173:60-62; Cv-DE#16-6:658). Agent Bobbitt explained that he then submitted the firearm's serial number to the Bureau of Alcohol, Tobacco & Firearms, and within two

weeks he received verification that the firearm was registered to Henderson. (Id.). On the other hand, movant testified on his own behalf at trial, stating in pertinent part, that he was unaware a gun had been found in the Expedition, and indicated that he saw the gun for the first time when it was brought into court. (Cr-DE#161:25). Movant further denied knowing anything about a gun. (Id.).

Here, it appears the government introduced information concerning the gun ownership for the purpose of establishing that the information provided to Agent Bobbitt by Jonas was reliable. The Eleventh Circuit has held that impeaching evidence is insufficient to warrant a new trial. See cf. United States v. Champion, 813 F.2d 1154, 1171 (11th Cir. 1987). Further, the responsibility lied with the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. at 326. It is evident that the jury considered movant's testimony against the evidence and testimony presented by the government, implicitly rejecting movant's testimony when it returned a verdict of guilty as charged.

Viewing the evidence adduced at trial in the light most favorable to the government, even if counsel were deficient as suggested by the movant, no showing has been made that movant was prejudiced thereby. In other words, even if counsel had objected to the introduction of the gun ownership and movant's post-arrest statements in that regard, there is no reasonable probability that the objection would have been sustained, much less that absent it's introduction, the movant would have been acquitted of all charges. Consequently, the movant cannot satisfy the Strickland prejudice

standard and is entitled to no relief on this claim.

Regarding movant's allegation that counsel was deficient for failng to object to the introduction of the gun on the basis that it is considered a tool of the drug trade, also warrants no relief. First, the claim is belied by the record which reveals that Attorney Dean did, in fact, sought to exclude the gun. However, in response to the defense's argument, the government argued that it was admissible as a tool of the drug trade under United States v. Ramsdale, 61 F.3d 825, 830 (11th Cir. 1995). In Ramsdale, the Eleventh Circuit observed that on a number of prior occasions, the presence of weapons supports the conclusion that a defendant was dealing or manufacturing drugs. Id. Here, movant has not demonstrated that the argument would have been successful. Consequently, he has failed to establish deficient performance or prejudice pursuant to Strickland and is thus entitled to no relief on this claim.

When evidence was introduced that movant was aware that the gun was in the Ford Expedition, and that it was also readily accessible inside the center console, defense counsel attempted to lessen the impact of this testimony through effective questioning of Agent Bobbitt. Through cross-examination, counsel established that movant was not the owner of the truck, and given the design of the center console, even the truck owner might not know that of the existence of the console where the gun was secreted, much less a passenger, such as movant. (Cr-DE#172:118-19,161-62).

Finally, to the extent movant means to argue that counsel should have objected when Agent Bobbitt recounted Jonas' testimony that movant had admitted Henderson placed the gun in the Ford, that claim also warrants no relief. In this case, the statement was not

hearsay because it was offered against a party and is the party's own statement. See Fed.R.Evid. 801(d)(2); United States v. Thompson, 130 F.3d 676, 683 n.7 (5th Cir. 1997)(Finding hearsay problems are not a concern if the jury believes that the defendant was one of the participants in the conversation, and thus any statements made by defendant would be admissible as a statement of a party opponent.). Morever, courts have held that informant's statements are not hearsay and may be admissible when they are "part of a reciprocal and integrated conversation" with the defendant. See United States v. Cheramie, 51 F.3d 538, 541 (5th Cir. 1995); see also, United States v. Menendez, 315 Fed.Appx. 103, 107 (11th Cir. 2008). Under these circumstances, movant has failed to demonstrate here that any objection on the basis argued would have been sustained by the court. Thus, he cannot establish prejudice arising from counsel's failure to pursue this nonmeritorious issue. He is therefore entitled to no relief on this basis.

In **claim 8**, movant asserts that counsel was operating under a conflict of interest as evidenced by counsel's post-trial motion to withdraw. (Cv-DE#1:14). He supports this claim by stating that he filed a post-trial, *pro se* motion (Cr-DE#93) to discharge his privately retained trial counsel, Attorney Dean. Thereafter, Attorney Dean also filed a motion to withdraw (Cr-DE#95) without indicating the nature or substance of the conflict. The motions were granted, and new counsel appointed. Movant suggests, without providing any objective evidence, that the tape of the September 28, 2009 hearing on the motions to discharge and withdraw will confirm that counsel admitted he had been ineffective and unprepared at trial, and was the individual that received "the money mentioned in one of the recorded phone calls. (DE#5:12).

In his supporting memorandum, movant supports this claim by

stating that counsel failed to object to the fact that the
government was maintaining they had a taped conversation from the
FDC phone system showing that movant paid codefendant Cox $15,000
for the affidavit Cox executed on movant's behalf, (Cv-DE#1:14; Cv-
DE#5:11-12). Movant also faults counsel for failing to call
coconspirator Cox as a defense witness at trial to establish that
movant only agreed to help out Cox if movant did not need a lawyer,
and to establish that movant never conspired with Cox to create a
fraudulent affidavit. (Cv-DE#5:12). He also argues that counsel was
ineffective for failing to call as a defense witness, movant's
prior counsel, Reginald Tony Moss, Esquire, to rebut the
government's allegation that movant and Attorney Moss composed a
false affidavit for Cox to sign. (Id.:13). According to the movant,
Moss never visited him at the FDC, and phone records would
establish movant never spoke with Moss so that it would have been
impossible for movant and Moss to compose the Cox affidavit. (Id.).
He also faults counsel for failing to utilize the foregoing
information to impeach the testimonies of Agent Bobbitt and Jonas.
(Id.:14).

First, it should be noted that movant has not provided this
court with any objective evidence that counsel admitted to any such
ineffectiveness. Second, the undersigned has listened to the
subject tapes, and contrary to movant's assertions, no showing has
been made that counsel admitted he was unprepared or ineffective at
trial. (See Cr-DE#103). To the contrary, counsel was well versed in
the nature of the charges, effectively and vigorously challenged
the government's case through cross-examination and closing
argument. The hearing tapes reveal that during a sidebar
conference, counsel explained ex parte that he had approximately
two weeks to prepare for trial, that movant knew this at the time
he was retained, but nevertheless insisted on proceeding with new

counsel. Counsel stated that after movant was found guilty, movant wrote him a letter accusing him of being ineffective regarding what witnesses were or were not called and things counsel should have and did not do at trial. After receipt of the letter and the PSI, counsel attempted on two separate occasions to visit movant, who refused to see him. Counsel further advised the court that he had received only $3,000.00 for a trial that lasted over a week. Counsel next stated that he would never prejudice anyone, and that once he signs on to represent a client, he does so even if there has been a lack of payment. Counsel also explained he did not file the motion to withdraw because he had not been paid or because there was any money owed for his representation, but rather because of movant's claims challenging counsel's effectiveness. Thereafter, the movant was first placed under oath, and in open court, was questioned regarding his assets. Movant stated he had no money in the bank or the in world, and further denied owning a car, stating that "they took the car." The court then granted counsel's motion to withdraw, and appointed new counsel for sentencing, but not before cautioning movant that he had already had two attorneys and there would be no further appointments of new counsel.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." See United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994); see also, Wood v. Georgia, 450 U.S. 261, 271 (1981).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that:

(1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11 Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); Mickens v. Taylor, 535 U.S. 162 (2002); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003); Hunter v. Secretary, Dept of Corrections, 395 F.3d 1196 (11th Cir. 2005). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11 Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11 Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.), cert. den'd, 467 U.S. 1230 (1984); see also, Porter v. Wainwright, 805 F.2d 930, 939-40 (11th Cir. 1986); see e.g., Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir. 1981); Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999), quoting, Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987). No such showing has been made here.

In this case, the movant needs to first establish the actual conflict. He provides no evidence to support his assertion that an actual conflict of interest existed pretrial or at trial. His allegations that counsel failed to file certain motions or call

certain witnesses resulted in an actual conflict is misplaced. The movant's arguments in support of this claim establish at best a disagreement with counsel's trial strategy, not an actual conflict of interest. The law is clear that strategic decisions by counsel do not support an ineffective assistance of counsel claim.

Even if we were to assume that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. Strickland, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable"[17] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[18] Novaton, supra at 1011, citing Freund v. Butterworth, 165 F.3d 839, 860 (11 Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. Id. In this case, no actual conflict or adverse effect has been demonstrated. Consequently, the movant cannot prevail on this claim.

---

[17]Because prejudice is presumed under Strickland, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" Freund, 165 F.2d at 960, citing, United States v. Fahey, 769 F.2d 829, 836 (1st Cir. 1985).

[18]In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. Novaton, supra at 1011, citing, Freund, 165 F.3d at 860.

As previously narrated herein, the movant has not demonstrated that counsel was operating under an actual conflict of interest. The fact that counsel chose not to call certain witnesses, to-wit, Cox and movant's first counsel Attorney Moss, to testify at trial was not unreasonable and does not support such a claim. First, no showing has been made that Attorney Moss would have testified as suggested, and movant has provided no affidavit from him admitting that he did not prepare the Cox affidavit, never visited movant or Cox, and never spoke with movant over the phone concerning the preparation of the affidavit. Movant maintains he provided Attorney Moss with the Cox affidavit at the time of movant's arraignment when Attorney Moss was assigned to represent him. (DE#5:13-14). Here, even if counsel had done as suggested and called these witnesses to testify, movant was risking that their testimony might have inculpated movant, rather than provide exculpatory evidence. More specifically as to Cox, he would have been subjected to cross-examination, and his credibility attacked given his post-arrest statements and subsequent guilty plea. Moreover, if it was proven that Cox was testifying falsely, since he had yet to be sentenced at the time movant's trial was ongoing, this could have resulted in an enhancement to his sentence for obstruction of justice, and possibly expose him to potential perjury charges, or both. At his Rule 11 proceeding, Cox did not identify by name the third party who conspired with him, but he did concede he was guilty and that the government had more than sufficient evidence to support the convictions. (Cr-DE#113).

Movants also claims to have learned during the pre-sentence investigation stage of his case, that Jonas confessed to others that he had never met the movant, but had met Cox, movant's codefendant. (Id.). Movant incorporates by reference the affidavits he submitted in support of his *pro se* motion for new trial in which

fellow inmates provided affidavits stating that Jonas had told them that movant had never confessed to him, and that he lied at trial stating that he had. (Cv-DE#119). The trial court denied the motion, finding it to be impeachment evidence. Assuming, without deciding, that counsel was deficient for failing to call these two witnesses, movant cannot establish prejudice arising therefrom. These witnesses would have been subjected to cross-examination concerning their reason for testifying, their motive for doing so, and the fact that they were convicted felons. Even if the witnesses had testified in an effort to impeach Jonas, no showing has been made here that their proffered testimony would have resulted in an acquittal. Consequently, petitioner cannot establish prejudice arising from counsel's purported deficiency.

In **claim 9**, movant asserts that he was denied effective assistance of post-trial counsel, who failed to investigate critical evidence which was newly discovered during the presentence investigation. (Cv-DE#1:14). At that time, movant claims he first learned that Jonas confessed to witnesses that he had never met the movant, and only knew movant's codefendant Cox. (<u>Id</u>.). These witnesses also claim Jonas advised them that he lied during his trial testimony when he denied that the government promised to assist him with his immigration status so that he would not be deported from the United States. (Cv-DE#5:14-15). Movant further claims trial counsel was ineffective for failing to investigate and call these witnesses to discredit Jonas' testimony, and/or otherwise for failing to insure that the issue was preserved for appellate review, including the fact that the government committed a fraud on the court and allowed Jonas to testify falsely at trial. (<u>Id</u>.). Movant also claims the foregoing was related to him by his cousin, Henderson, in October 2011, while Henderson was detained on unrelated charges at the local FDC. (<u>Id</u>.). The arguments raised

herein are mere reiterations of the arguments raised previously in relation to claim 8 above and should be denied for the reasons expressed above.

Moreover, it should be noted that the subject affidavits are of doubtful believability,[19] lacking in trustworthiness and credibility. One affidavit is undated, while the other shows it was executed in September 2009, months after movant's trial was concluded. These affidavits provided post-trial are highly suspicious and disingenuous, and should thus be viewed with disfavor in this collateral proceeding. Nevertheless, as found by the district court in relation to movant's new trial motion, even if the subject testimony would have been before the jury, at best it would have served to impeach Jonas, but there still remained sufficient evidence upon which the jury could convict movant. Thus, he cannot establish prejudice pursuant to Strickland arising from counsel's failure to preserve the issue, investigate or otherwise call these witnesses to testify at trial. Furthermore, even though counsel did not pursue the issue post-trial, movant did so, filing a new trial motion, despite being represented by counsel. The court did not strike the motion, but rather denied it on the merits, as noted above. That denial was subsequently affirmed on direct appeal. See Cr-DE#201. For this alternative reason, movant cannot establish prejudice and is therefore entitled to no relief on the arguments raised in connection with claim 9.

---

[19]Post-trial affidavits such as the one relied upon by Hodge are generally viewed with extreme suspicion. See Drew v. Scott, 28 F.3d 460, 462-63 (5 Cir.), cert. denied, 512 U.S. 1266 (1994). See also May v. Collins, 955 F.2d 299, 314 (5 Cir. 1992) and cases cited therein, cert. denied, 504 U.S. 901 (1992)(when faced with recanting affidavits, trial court may make credibility choice in favor of trial testimony without taking additional live testimony). Moreover, when viewed in light of the evidence admitted at trial, the witness' purported testimony would not have affected the outcome of this criminal proceeding.

In **claim 13**, movant asserts that he was denied effective
assistance of trial counsel, where his lawyer failed to investigate
and then object to the admissibility of intercepted wire or oral
communications, on the basis that they were not properly
authenticated prior thereto. (Cv-DE#1:16; Cv-DE#5:18-19). According
to the movant, evidence of conversations between the CI and Cox
should not have been admitted because neither witness testified at
trial, so that movant's confrontation rights were violated. (Cv-
DE#5:19). He further faults counsel for waiving the right to secure
the identity and testimony of the CI. (Id.).

Nontestimonial evidence must be authenticated according to
Fed.R.Evid. 901 in order to be admitted. "The requirement of
authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a
finding that the matter in question is what its proponent claims."
Fed.R.Evid. 901(a).  The rule provides illustrations to demonstrate
conformity therein. Specifically, Fed.R.Evid. 901(b)(5) states that
"identification of a voice, whether firsthand or through mechanical
or electronic transmission or recording, by opinion based upon
hearing the voice at any time under circumstances connecting it
with the alleged speaker." Id. Accordingly, "once a witness
establishes familiarity with an identified voice, it is up to the
jury to determine the weight to place on the witness's voice
identification. United States v. Duncan, 166 Fed. Appx. 464 (11th
Cir. 2006) (citing Brown v. City of Hialeah, 30 F.3d 1433, 1437
(11th Cir. 1994).

The Eleventh Circuit has further held that authentication
under Rule 901 requires the representation of sufficient evidence
to make out a *prima facie* case the proffered evidence is what it
purports to be, and only upon such showing, the evidence should

then be admitted for the trier of fact to determine whether the proffered evidence is what it purports to be. <u>United States v. Caldwell</u>, 776 F.2d 989, 1001-02 (11th Cir. 1985). Authentication may be accomplished through the testimony of a witness with knowledge. <u>Fed.R.Evid</u>. 901(b)(1); <u>United States v. Lanzon</u>, 639 F.3d 1293, 1301 (11th Cir.), <u>cert. den'd</u>, ___ U.S. ___, 132 S.Ct. 333, 181 L.Ed.2d 208 (2011).

In this case, the tape recordings of the telephone calls were admissible because there was sufficient evidence to support a finding the records were what the government purported them to be. The trial transcripts, and in particular, Agent Bobbitt's testimony, reflects that he listened to the tapes several times and recognized movant's voice. Thus, no deficient performance or prejudice has been established arising from counsel's failure to seek authentication of the wire tap communications prior to its admission.

Alternatively, movant appears to argue that oral communications intercepted from a cellular phone were obtained in violation of the wiretap warrant requirements. (Cv-DE#5:18).

Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth numerous requirements the government must meet before electronic surveillance (wiretaps) may be authorized." <u>United States v. Flores</u>, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *21 (N.D.Ga. Sept. 27, 2007), adopted at *15. For example, pursuant to 18 U.S.C. §2518, a wiretap application must include:

> A full and complete statement of the facts and circumstances relied upon by the applicant ... including details as to the particular offense ..., a particular

66

description of ... the type of communications sought to be intercepted, the identity of the person ... whose communications are to be intercepted, and a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

See 18 U.S.C. §2518(1)(b), (c)) (internal marks omitted) (alterations in original). Upon a proper application, a judge may issue an *ex parte* order authorizing the interception of wire communications if: "the judge finds probable cause to believe that an individual is committing or has committed a qualifying offense; that particular communications concerning that offense will be obtained through such interception; and that the facilities from which, or the place where, the communications are to be intercepted are being used in connection with the offense, or are leased to, listed in the name of, or commonly used by such person." See 18 U.S.C. §2518(3)(a), (b) and (d)). See also United States v. Robles, 283 Fed.Appx. 726, 734-35 (11th Cir. 2008)(*per curiam*)(unpublished).

Movant does not provide any evidence to support this claim. Further, he has not demonstrated that even if this precise argument had been raised below, that the information would have been suppressed and resulted in a favorable decision for the movant at trial. Thus, he cannot demonstrate prejudice under Strickland and is entitled to no relief on this bare and conclusory allegation. Machibroda, supra.

In **claim 14**, movant asserts that he was denied effective assistance of trial counsel, where his lawyer failed to properly object to the admission of hearsay testimony of Cox presented through the testimony of Agent Bobbitt, which was permitted as an

67

excited utterance under <u>Fed.R.Evid</u>. 803.(Cv-DE#1:16). According to the movant, the government presented an altered version of the audio recording from inside the patrol car, which was purportedly placed there by Agent Bobbitt, and which recorded conversations between movant and Cox. (Cv-DE#5:19). As discussed previously in this Report, the evidence was properly admitted and no showing has been made that the recordings were altered. Moreover, movant suggests that seconds after Agent Bobbitt overheard Cox tell movant that "those nigga's set us up," Cox also commented stated, "I swear to God, I don't know what's going on." (Cv-DE#5:19). First, these statements when considered together are not contradictory, as movant suggests, nor do they purport to exculpate movant. The later statement can merely be clarifying to movant that Cox was unaware or was pretending to be unaware of how or who set them up. Regardless, movant has not established here that the recordings were altered. Moreover, admission of Cox' statement was proper. Consequently, no deficient performance or prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim.

To the extent he means to argue that counsel was ineffective for failing to argue and/or otherwise preserve the fact that the government suborned Agent Bobbitt's false testimony regarding the arrest of the movant and his coconspirators, that claim also warrants no relief. Agent Bobbitt testified at trial that he was not part of the "take down" team, but was monitoring the conversations had with the undercover and observed the arrest and take down. (Cr-DE#173:40-41). Thereafter, Agent Bobbitt arrived at the take down scene, and overheard Cox' statement. (Cr-DE#173:42). On the record before this court, movant has not demonstrated that the government engaged in prosecutorial misconduct, much less that it suborned testimony that it knew to be false. Consequently,

68

movant cannot prevail on this claim, as he cannot satisfy any of the <u>Strickland</u> prongs.

In **claim 16**, movant asserts he was denied effective assistance of trial counsel, where his lawyer failed to subpoena Cox as a defense witness to testify at trial. (Cv-DE#1:17). Movant claims counsel advised him that Cox would effectively "mess up" movant's case, siding with the government after being threatened and/or otherwise impeached by them. (Cv-DE#1:17). Under these circumstances, counsel advised movant that they did not need Cox's testimony. (Cv-DE#1:17). Movant further faults counsel for waiting until trial was underway to inform the movant he cannot present the agreed upon defense, because counsel had been threatened with a fine if he did so. (Cv-DE#1:22). According to the movant, Cox advised him that the government wanted Cox to testify falsely against movant, and that the government was "coaching" Jonas on his trial testimony. (Cv-DE#5:22). He faults counsel for also failing to cross-examine government witnesses in order to establish the governmental misconduct mentioned above. (Cv-DE#5:23). The argument raised herein are mere reiterations of arguments previously raised by movant and addressed by the court above. Further, no evidence has been shown that the government coached or otherwise instructed its witnesses to lie. Movant's specious allegations here warrant no relief. He has not demonstrated that counsel was ineffective for failing to pursue this nonmeritorious issue. He is entitled to no relief on this claim.

In **claim 19**, movant asserts that he was denied effective assistance of trial counsel, where his lawyer allowed the government to present false, misleading testimony that agents witnessed the SUV, occupied by four males, enter the Sam's Club parking lot, when in fact, the surveillance agents observed the SUV

stop several parking spaces away from the undercover vehicle. (Cv-DE#1:18). According to the movant, the Sam's Club store surveillance video confirms the testimonies of the movant and the CI at trial, while discrediting Agent Bobbitt's testimony. (Cv-DE#5:30-31). Movant faults counsel for failing to present the video and/or these facts in order to impeach Agent Bobbitt. (Cv-DE#5:31). Movant suggests, without any objective evidence, that the video would have also confirmed the absence of a third vehicle occupied by some females, which contained the MDMA pills. (Cv-DE#5:31).

First, contrary to movant's allegations here and in his traverse, Government's Exhibit 34, the DVD of the Sam's Club video of the April 8, 2009 meeting, was introduced into evidence. (See Cv-DE#16-6:Day 2 Trial Trans.:121; see also, Cr-DE#81-Gov't Ex. List). Moreover, the airplane video of that same meeting, Government Exhibit 25, was also introduced into evidence. (See Cv-DE#16-6:Day 2 Trial Trans.:118; see also, Cr-DE#81-Gov't Ex. List). Thus, movant cannot demonstrate deficient performance or prejudice arising from counsel's failure to seek introduction of the Sam's Club video into evidence.

To the extent movant argues in the alternative that the video would discredit Agent Bobbitt's testimony, and support that of the movant and the CI, concerning the fact that Cox got out of the Expedition at a different location than that testified to by Agent Bobbitt or as represented by Agent Bobbitt in his DEA-6 Report (Cv-DE#4:Ex.V), movant is still entitled to no relief on that basis. Even if true, such information would not have resulted in an acquittal.[20] The video and testimony were before the jury. They

---

[20]Regardless, Agent Bobbitt's DEA-6 Report dated April 14, 2009, reveals that surveilling agents observed the Expedition arrive and park several spaces away from the UC vehicle, and that Cox had to walk across the parking toward the UC vehicle. (DE#4:Ex.V). Contrary to movant's representation here, this does not

weighed the credibility of the witnesses and the evidence. No
constitutional violations arising from the government's suborning
perjury or  presentation of false testimony has been established.
On the record here, no showing has been made that further attention
to this matter by counsel or otherwise would have resulted in a
different outcome, that is, in the acquittal of the movant. Thus,
no prejudice under  Strickland has been demonstrated arising from
counsel's failure to pursue the arguments raised by movant in
relation to this claim. He is thus entitled to no relief.

In **claim 24**, movant asserts that he was denied effective
assistance of counsel, where his lawyer failed to investigate and
present evidence regarding the fact that Tedrick Cunningham was
mentally ill, borderline retarded, and was receiving government
assistance due to his illness/disability. (Cv-DE#1:20). Movant
advised counsel that Cunningham was not mentally fit to understand
what he was telling the undercover agent during a converstaion had
while placed in a holding cell at the DEA office. (Cv-DE#1:20; Cv-
DE#5:52-53). Movant claims Cunningham pretended to be a drug dealer
because he wanted to impress the undercover agent, whom Cunningham
believed was a high ranking drug dealer. (Cv-DE#5:52). According to
the movant, counsel needed to investigate the foregoing because the
government attempted to establish at trial that Cunningham was a
competent, unindicted coconspirator. (Cv-DE#22:40). To support the
fact that Cunningham was incompetent, he attaches proof that
Cunningham has been receiving Social Security disability checks for
the 9-year period prior to the DEA questioning Cunningham following
his arrest. (Cv-DE#5:53). He further states counsel advised movant
not to testify as to this fact during his trial testimony. (Cv-

---

purport to state that the vehicles were side by side, or anywhere other than at
the Sam's Club lot. His argument is purely speculative, specious, and refuted by
the record.

DE#5:53). As a result, movant suggests he was unduly prejudiced by counsel's deficiency. (Id.).

First, review of the record reveals that movant could have, but chose not to, testify regarding Cunningham's competency. He did explain that Cunningham was like his nephew, and that he was very close with Cunninghma's family. (Cr-DE#162:13). During cross-examination movant claims he had advised both Cunningham and his father to sell some clothes for him. (Cr-DE#162:13,61-63). Movant denied that references during a recorded conversation with movant's girlfriend was concerning drugs. (Id.). To the contrary, he claims he was instructing his girlfriend to attempt to get the approximately $800.00 owed movant from Cunningham, representing the proceeds from the sale of some clothes. (Id.).

Second, other than the SSI query showing Cunningham receives disability payments, the nature and extent of the disability is not before the court. Movant provides no objective evidence, in the form of medical records or reports, to substantiate that Cunningham was mentally incompetent. The SSI documents attached only demonstrate that Cunningham was receiving disability, but does not state the basis for the disability, whether physical or mental. Consequently, movant cannot demonstrate deficient performance much less prejudice arising from counsel's failure to further investigate this issue and present it for the jury's consideration.

Agent Bobbitt confirmed, as borne out by his April 2009 DEA-6 Report (Cv-DE#4:Ex.V), that there was no public information included in the DEA-6 or elsewhere that Cunningham was in a cell with the CI after his arrest, nor that Cunningham took responsibility for the firearm found in the Expedition at the time the arrests of the movant and others were effectuated. (Cr-

DE#160:4-15). In fact, testimony concerning Cunningham was adduced at trial to confirm that information learned by Jonas could not have been obtained from review of public records and to refute movant's own testimony that the conversation had with movant's girlfriend concerned the proceeds from the sale of goods, rather than drugs.

Further, counsel's strategic decision in this regard should not be second-guessed here. Cunningham was not charged as a coconspirator in this case. Although he was arrested at the April 2009 take-down because he was a back seat passenger in the Expedition and was present at that transaction, he and Henderson were processed and not indicted. Even if counsel had brought the issue before the jury, or otherwise called Cunningham to testify, there's no evidence here that this information would have resulted in an acquittal. To the contrary, Cunningham could well have invoked his right to remain silent, or worse, could have inculpated movant by providing further details regarding movant's involvement in the charged conspiracy. Thus, movant cannot prevail on this claim as he cannot establish either prong of <u>Strickland</u>.

Finally, to the extent movant faults counsel for failing to challenge the fact that the government failed to indict Cunningham or Henderson, that claim must also fail. "As long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." <u>United States v. Barner</u>, 441 F.3d 1310, 1315 (11th Cir. 2006)(<u>citing</u> <u>United States v. Cole</u>, 755 F.2d 748, 758 (11th Cir. 1985); <u>United States v. Spence</u>, 719 F.2d 358, 361 (11th Cir. 1983)).

The decision whether to prosecute for an offense is vested

solely in the discretion of the government. <u>Wayte v. United States</u>, 470 U.S. 598 (1985). A defendant arguing selective prosecution carries a heavy burden. <u>United States v. Ramirez</u>, 765 F.2d 438 (5 Cir. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1063 (1986); <u>United States v. Jennings</u>, 991 F.2d 725, 730 (11th Cir. 1993). In order to demonstrate selective prosecution, the defendant must show 1) that he was singled out for prosecution although others similarly situated who committed the same acts were not prosecuted and 2) that the selective prosecution was based on race, religion, or other arbitrary or invidious classification. <u>Wayte</u> at 608; <u>Jones v. White</u>, 992 F.2d 1548, 1571 (11th Cir. 1993); <u>United States v. Petit</u>, 841 F.2d 1546, 1554 (11 Cir. 1988); <u>United States v. Collins</u>, 972 F.2d 1385, 1397 (5 Cir. 1992). A showing of discriminatory purpose requires the defendant to prove that the government selected a particular course of action because of and not merely in spite of its adverse effects on an identifiable group. <u>Id</u>. In this case, the movant has failed to demonstrate that he is a victim of selective prosecution or that his constitutional rights were violated arising from the government's prosecution. Absent a showing that he was selected for prosecution or that his prosecution was racially based, the movant cannot establish prejudice pursuant to <u>Strickland</u> arising from counsel's failure to pursue this issue. He is thus entitled to no relief on this claim.

Alternatively, to the extent the movant means to argue he was the subject of vindictive prosecution, that claim also warrants no relief. As a result, counsel was not deficient and no prejudice has been established arising from counsel's failure to pursue the issue. A criminal defendant raising a vindictive prosecution claim must show some objective evidence of actual vindictiveness on the part of the government or raise circumstances meriting a rebuttable presumption of vindictiveness. <u>United States v. Rafferty</u>, 296 Fed.

Appx. 788, 796 (11th Cir. 2009). The Eleventh Circuit recognizes a distinction between "instances in which the prosecutor substitutes a more serious charge for the original charge and those in which new charges are based on independent acts." <u>United States v. Jones</u>, 601 F.3d 1247, 1261 n. 5 (11th Cir. 2010). Thus, when a prosecutor brings additional charges for independent acts, even if they are part of "the same spree of activity," a defendant must show proof of actual vindictiveness. <u>United States v. Taylor</u>, 749 F.2d 1511, 1513 (11th Cir. 1985)(citation and internal quotation marks omitted). No such showing has been made here. Movant has failed to establish that the government had a vindictive motive. Additionally, movant has also not demonstrated any objective evidence of actual vindictiveness or raise circumstances meriting a rebuttable presumption. Thus, movant's vindictive prosecution claim fails. Consequently, the movant has failed to establish deficient performance or prejudice arising from counsel's failure to pursue this claim pretrial. He is therefore entitled to no relief on this claim.

In **claim 25**, movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object or otherwise preserve the issue that the government failed to disclose that Metro-Dade Police Detective Robert Christie would be testifying as an expert at trial. (Cv-DE#1:22). Movant also claims counsel was ineffective for failing to investigate the detective prior to his cross-examination. (Cv-DE#5:54).

In this case, the record reveals that prior to trial, the government filed its witness and exhibit list. (Cr-DE#s69,81). In its witness list, Detective Christie was listed as a witness, but the government made no mention that it was intending to call the detective as an expert. (Cr-DE#69).

Federal Rule Criminal Procedure 16 sets forth the rules for disclosure and discovery in preparation for a criminal trial. Specifically, Fed.R.Cr.P. 16(a)(1)(E) requires the government, upon the defendant's request, to produce physical evidence in its possession, custody, or control that it intends to rely upon during its case-in-chief. A party has a continuing duty to promptly disclose the existence of evidence that must be produced upon discovery before or during trial. Fed.R.Cr.P. 16(c). A district court may, upon a failure to comply, exclude any undisclosed evidence. Fed.R.Cr.P. 16(d)(2)(C). However, the Eleventh Circuit has held that the late disclosure of Rule 16 evidence necessitates reversal only if it violates a defendant's substantial rights. See United States v. Rodriquez, 452 Fed.Appx. 883, 887-888 (11th Cir. 2012)(unpublished)(citing United States v. Bueno-Sierra, 99 F.3d 375, 380 (11th Cir. 1996)(per curiam). Substantial prejudice occurs if a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense. Id.

However, the law is also clear that a witness is considered a lay witness if his or her testimony is in the form of opinions "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. "The line between the expert testimony under Fed.R.Evid. 702 ... and lay opinion testimony under Fed.R.Evid. 701 ... is not easy to draw." United States v. Colon Osorio, 360 F.3d 48, 52-53 (1st Cir. 2004).

Nothwithstanding, the Eleventh Circuit has recognized that officers and employees can testify as lay witnesses "based upon their particularized knowledge garnered from years of experience

within the field." <u>United States v. Hill</u>, 643 F.3d 807, 841 (11th Cir. 2011)(citation omitted); <u>Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.</u>, 320 F.3d 1213, 1223 (11th Cir. 2003). Similarly, other courts have held that "[e]xperience-derived police testimony concerning criminals' typical modi operandi during a drug transaction does not automatically constitute expert testimony, but ... lay-witness testimony admissible under Federal Rule of Evidence 701...." <u>United States v. Page</u>, 521 F.3d 101, 105 (1st Cir. 2008).

In this case, Detective Christie did not provide expert testimony. Rather, his testimony pertained to the records he reviewed in relation to the cellular activities between movant and Cox, and was based upon his training and experience, but was not an opinion based upon a special technical skill or scientific background. (<u>See</u> Cr-DE#160:24-26). Specifically, the detective explained that for the past 15 years he had reviewed cell phone records, and testified in court based on his analysis of those records. (<u>Id</u>.). As to the movant's case, the detective explained that he reviewed the cellular phone records for two particular dates, March 19, 2009 and April 8, 2009, and then prepared a summary of the records which itemized the calls made from Metro PCS phones. (<u>Id</u>.). The detective was then permitted to explain, after the court overruled movant's objection, that once a call is placed and the send button pressed on Metro PCS phones, the call is sent to an originating tower or switch, which then directs the call to another terminating cell tower, to the number being dialed. (<u>Id</u>.:27-34). In overruling the objection, the court noted correctly that the witness was not offering expert testimony, but merely offering an explanation not an opinion, based on personal knowledge, having worked on Metro PCS phones since 2001. (<u>Id</u>.).

Here, the Detective's testimony was not based on scientific,

technical, or other specialized knowledge, but rather based on his
review of the Metro PCS phone records and the locations of the
cellular towers for each relevant call. Based on his personal
knowledge of the location of cell towers and Metro PCS, he
testified as to the date, time, and location of calls made between
the parties. (Id.:34-56). Thus, because the testimony was properly
admitted under Fed.R.Evid. 602 and Fed.R.Evid. 701, and did not
constitute expert testimony under Fed.R.Evid. 702, the district
court did not abuse its discretion in allowing Detective Christie
to testify according. See United States v. Feliciano, 300 Fed.Appx.
795, 800-801 (11th Cir. 2008)(unpublished-affirming Detective
Christie's testimony as that of lay and not expert witness). Thus,
any further argument by counsel on the basis proffered by movant
here would not have succeeded because no deficient performance or
prejudice has been demonstrated under Strickland.

In **claim 27,** movant asserts that his confrontation rights were
violated and he was denied effective assistance of counsel, after
the court permitted the government to present hearsay statements to
the jury regarding Cox's confession to Agent Bobbitt concerning
movant's guilt. (Cv-DE#1:22; Cv-DE#5:57-58). Movant claims Cox's
statement to movant, wherein he said, **"**Hey Bud, those nigga's set
us up,**"** introduced through the testimonies of Jonas and Agent
Bobbitt, should have been excluded on hearsay grounds. (Cv-
DE#1:15,22; Cv-DE#5:20,57-58). He also suggests the statement
should have been excluded because his confrontation rights were
violated since Cox did not testify at trial. (Id.). He faults
counsel for failing to pursue these arguments and/or otherwise for
failing to preserve the issue for appellate review. (Id.).

The record here reveals that movant's counsel did, in fact,
object on hearsay grounds to the testimony of Agent Bobbitt

regarding Cox' statement, made immediately upon arrest. (Cr-DE#173:27-28). The government countered, stating that it was admissible as an excited utterance exception to the hearsay rule. (Id.). The court then heard the statement, overruling the objection on the basis that it was, in fact, an excited utterance, and not a present sense impression. (Id.). Thereafter, Agent Bobbitt recounted for the jury what Cox stated to the movant immediately upon his arrest. (Id.).

In general, hearsay is inadmissible, but there are a number of exceptions. Fed.R.Evid. 802. For example, an excited utterance is an exception to the hearsay rule, which allows into evidence a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The critical inquiry is not the amount of time that has passed since the event but rather whether the "declarant was still in a state of excitement resulting from the event" when he made his declaration. See United States v. Cain, 587 F.2d 678, 681 (5th Cir. 1979) (citation omitted).[21] Even if the district court's reasons for overruling a hearsay objection are not clear from the record, the Eleventh Circuit has found no abuse of discretion by admitting the statement if there is an applicable exception. See United States v. Jiminez, 564 F.3d 1280, 1288-89 (11th Cir. 2009); United States v. Brown, 441 F.3d 1330, 1359 (11th Cir. 2006). On this record, no deficient performance or prejudice has been established arising from counsel's failure to further pursue an objection on hearsay grounds to Cox's statement. Thus, this argument must fail.

---

[21]This Court adopts as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

Movant also suggests his confrontation rights were violated because the court admitted coconspirator Cox' statement, and movant was unable to cross-examine Cox regarding the statement. (Cv-DE#1:21; Cv-DE#5:57-58). The Confrontation Clause bars the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Hearsay statements are testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52, 124 S.Ct. at 1364. Formal statements given during the course of police interrogations are " definitively testimonial." United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005)(quotations omitted).

However, in Crawford, the Supreme Court noted co-conspirator statements made in furtherance of a conspiracy are nontestimonial and, therefore, not subject to the requirements of declarant unavailability and prior cross-examination. Crawford, 124 S.Ct. at 1367 (opining statements in furtherance of a conspiracy are "by their nature ... not testimonial"). In Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 2782-83, 97 L.Ed.2d 144 (1987), moreover, the Supreme Court held "the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that ... a court need not independently inquire into the reliability of such statements." Further, statements of an unindicted co-conspirator may be admitted as long as the existence of the conspiracy itself has been established. See United States v. Castillo-Gamez, 466 Fed.Appx. 859, 865 (11th Cir. 2012)(unpublished) (citing United States v. Salisbury, 662 F.2d 738, 740 (11th Cir. 1981)). In this case, the out-of-court remark by Cox was nontestimonial statement falling under a firmly rooted hearsay

exception and, as such, their admission did not offend movant's constitutional rights. See also, Davis v. Washington, 547 U.S. 813, 821 (2006); cf. Michigan v. Bryant, __ U.S. ___, 131 S.Ct. 1143, 1157 (2011). Here, movant has not demonstrated either deficient performance or prejudice arising from counsel's failure to pursue this issue. He is thus entitled to no relief on this basis.

### ii. Claims Challenging Counsel's Effectiveness Re Sentencing

In **claim 10**, movant asserts that he was denied effective assistance of sentencing counsel, for failing to object to the presentation of a new PSI at sentencing, and for failing to request a 35-day continuance of the proceeding in order to enable him to review and file objections to the new PSI. (Cv-DE#1:14-15). Movant maintains counsel told him to sit quiet at sentencing, and if he did so, counsel promised to withdraw after sentence was imposed. (Id.). In his supporting memorandum, movant expands the claim, complaining that counsel should have requested the much needed continuance in order to lodge objections to and/or otherwise challenge the calculations regarding the amount of the MDMA involved in the offenses. (Cv-DE#5:16). He also faults counsel for failing to investigate whether portions of the trial transcripts regarding the laboratory technician's testimony as to the quantity of drugs were removed or otherwise omitted. (Id.).

First, regarding movant's complaint that counsel was ineffective for failing to request a continuance due to the untimely disclosure/amendment to the PSI, that claim warrants no relief. It is true that Fed.R.Cr.P. 32(e)(2) requires the probation officer to provide the PSI to the defendant, the defendant's attorney, and an attorney for the government at least 35 days prior to sentencing unless the defendant waives this minimum period.

The record in this case reveals that following the movant's conviction, the probation officer prepared the initial PSI and made it available for disclosure on August 28, 2009. (PSI:p.2). On that same date, a copy of the PSI was obtained by defense counsel. (PSI:Addendum:p.2). An addendum was made available on September 18, 2009. (Id.). A second addendum was made available on December 14, 2009. (PSI:Second Addendum:p.3). The movant appeared for sentencing on December 15, 2009. (Cv-DE#16:Ex.I:Sentencing Transcript). At the outset of the hearing, newly appointed defense counsel, Richard Docobo, Esquire, advised the court in pertinent part as follows:

> I--and I think Miss Brantley [probation officer] had a chance to tell you this. I was operating from the PSI that I was told by Mr. Dean was the operative PSI. Apparently there was a revision. Miss Brantley and I had a conversation about it.

(Id.:3).

The court acknowledged that it was aware of this fact, but was also informed that counsel had received the revised PSI the preceding day. (Id.). Counsel acknowledged receipt of the revised PSI, noting that the facts were the same, but he had not been able to review it with the movant at that time because he had a family emergency arise. (Id.:3-4). In response, the court indicated that it was going to have the probation officer state on the record the revisions that were made so that movant and counsel could look at it. (Id.:4).

In response, counsel indicated that was a "good idea." (Id.). He further stated that he had already done that in a general sense with the movant that morning, but he had not had the ability to read it to the movant "word-for-word." (Id.). Thereafter, the probation officer explained that the PSI was revised to reflect Cox

had been sentenced on September 9th, to which counsel responded that
he had reviewed that fact with the movant. (Id.). The probation
officer next explained that the role assessment section had been
revised (¶¶20-21) to reflect that the court held Cox accountable
for 655 kilograms of marijuana [MDMA equivalency], but not
responsible for the N-Benzylpiperazine nor the 12.5 grams of
marijuana. (Id.:5).

The next revision, which forms the basis for movant's
discontent here, concerned the inclusion of 4,000 tablets of MDMA
in the drug calculations, as set forth in paragraphs 18 and 26 of
the revised PSI. (Id.:7-8,10). When the court asked how that was an
issue, defense counsel responded that, in his view, that was the
"real change" because that quantity of tables was not included in
the original PSI. (Id.:8). The court then noted that the evidence
adduced at trial established the amount of MDMA tablets. (Id.:9).

Later in the proceedings, when asked whether counsel had
reviewed the addendums with the movant, counsel responded that he
had not because he never received the addendums, but acknowledged
they were orally made known to him the day before. (Id.:20). In
response, an extra copy of the addendums was provided and handed to
the movant so that he could have an opportunity to review its
content. (Id.:21). Although counsel acknowledged he had been
unaware of the existence of these addendums, he stated that he had
no issue with them because they merely incorporated the revisions
previously discussed. (Id.:21-23). After a brief pause, in response
to defense counsel's statement that the addendum was dated December
14th, the court commented on the record that she was "looking at the
two of you looking at it so that I am satisfied that Mr. Williams
[movant] has no issue with the fact that he has not seen it before
now." (Id.:23). Counsel agreed, but noted that he had not received

that addendum until yesterday. (Id.).

Then, after a brief, off-the-record discussion between movant and counsel, counsel represented to the court that movant was aware of what was contained within the addendums. (Id.). The court then questioned movant directly, who responded that he was now looking at the second addendum, and then indicated he had finished doing so. (Id.:24). When asked if he had any questions about its content, movant responded, "No, ma'am." (Id.:24).

Argument was then heard regarding whether the transaction involving the 4,000 pills involved MDMA or some other drug. Counsel explained that the pills could have been fake pills, or any other drug. (Id.:24-26). The government, however, countered that what the pills actually were is irrelevant because the facts adduced at trial established that movant believed the transaction involved 4,000 tables of MDMA, and as such, movant should be held accountable for that quantity.[22] (Id.).

_____

[22]Next, although not precisely at issue here, the government argued in support of its request for the obstruction of justice enhancement, finding movant testified falsely at trial. (Cv-DE#16:Ex.I:27-28). In response, the court commented that his decision to testify and his "extreme unbelievability why he was testifying helped seal the government's case." (Id.:28). Later on, the court also commented, as follows:

> I was observing him during the trial. That's part of my responsibility. And Mr. Williams was just so obviously in his flat-out lies that -- It is great chutzpah to get up on the stand and try and say them with a straight face that he was not involved, that he was dropping someone off to go on a cruise. And although between the two witnesses as to the weapons, given both of the backgrounds and the respect for the law that both have shown previously, I think Mr. Williams had more of an incentive to make the statement that he said that that was the first time he had seen the gun and to make a false statement to that effect than the other gentleman. So between the two I would probably believe the other gentleman more.

(Id.:30).

84

Although requests for continuance are not specifically addressed, Fed.R.Cr.P. 32 requires a district court to impose a sentence "without unnecessary delay." Fed.R.Cr.P. 32(b). The Eleventh Circuit has considered an ineffective assistance of counsel claim in the context of a counsel's failure to request a continuance. See Jones v. Smith, 772 F.2d 668, 674 (11th Cir. 1985). In Jones, the Eleventh Circuit found that to sustain a claim that counsel was ineffective for failing to request a continuance, the movant must establish an entitlement to the grant of the motion and prejudice from the failure to request the motion. Id. No such showing is made here.

Here, the parties were able to carefully review and lodge objections to the revised PSI at sentencing. The court considered all of the arguments, the facts and calculations contained in the revised PSI, and considered the §3553 factors. (Id.:62). The court then indicated that a term of 235 months in prison is an appropriate sentence. (Id.). The court recognized that the low end of the guideline was 210 months, but noted it was still concerned with movant's continued criminal behavior. (Id.). The court then indicated that it would not be going to the high end of the guidelines because it believed that the additional 25 months from the low end of the guidelines was adequate to deal with the obstruction of justice enhancement, and it was being generous in imposing the term of 235 months in prison. (Id.:63-64). Thereafter, movant addressed the court, once again stating it was not right that the court was imposing a 19-year term of imprisonment for a crime he did not commit. (Id.:70).

From the record, it is evident that the movant was given more than ample opportunity to review the PSI revisions and addendums

85

thereto. Moreover, movant cannot establish either deficient performance or prejudice arising from counsel's failure to object to the calculations based on the 4,000 tablets of MDMA. As noted correctly by the court, as previously described herein, there was more than sufficient evidence adduced at trial to support the fact that movant was involved in the agreement to sell the 4,000 MDMA tablets to the UA. Thus, no showing has been made that any further objections or investigations thereto would have resulted in a lesser sentence. Further, even had counsel requested a continuance as suggested by movant here, the movant cannot demonstrate prejudice stemming from counsel's failure to request a continuance or otherwise continue to object to the untimely disclosure of the PSI. See e.g., United States v. Metallo, 908 F.2d 795 (11th Cir. 1990)(Defendant's receipt of his PSI three days prior to sentencing afforded him a reasonable time to read the PSI and to prepare for sentencing where there was evidence that he and his counsel were aware of the contents of the PSI, had discussed it, and were well-prepared to counter the information contained therein and to submit new information.).

Under the circumstances presented here, the movant cannot establish prejudice arising from any alleged untimely disclosure of the PSI or the court's refusal to grant additional time to investigate the contents therein. He has also failed to demonstrate that further objection to the quantity of drugs attributable to the movant would have been successful, thereby lowering his sentence. Thus, he has not shown prejudice under Strickland and is therefore entitled to no relief on the claim.

iii. Challenges to Counsel's Effectiveness Re Appeal

In **claim 11**, movant asserts that he was denied effective

assistance of post-trial and appellate counsel, who failed to investigate the fact that portions of movant's trial testimony were omitted from the record. (Cv-DE#1:15; Cv-DE#5:17-18). According to the movant, he wrote his appellate attorney advising him that portions of movant's trial testimony were altered and/or otherwise omitted by the court reporter. (Cv-DE#1:15). Specifically, movant claims he his testimony at trial that he had heard the government witness testify that movant had confessed to him concerning his involvement in the charged offenses, but movant denied knowing the witness or otherwise confessing to that individual was missing or otherwise omitted from the record. (Id.). Movant also states that his testimony, that he would have gone to Cox for help in filling out paperwork while in federal custody because Cox was an experienced inmate law clerk, having served time before, was also omitted. (Id.). He attaches a letter to his appellate counsel, as well as, letters to the court reporter requesting that they investigate the issue and make the appropriate corrections. (Cv-DE#5:17; Cv-DE#4:Ex.N).

Defendant faults his counsel for failing to investigate and/or otherwise seek corrections of the transcripts to include this missing testimony. Relevant to the issue before the court, Title 28 U.S.C. §753(b) provides, in pertinent part, as follows:

                    *      *      *

    The reporter or other individual designated to produce
    the record shall attach his official certificate to the
    original shorthand notes or other original records so
    taken and promptly file them with the clerk who shall
    preserve them in the public records of the court for not
    less than ten years.

    The reporter or other individual designated to produce
    the record shall transcribe and certify such parts of the
    record of proceedings as may be required by any rule or

order of court, including all arraignments, pleas, and proceedings in connection with the imposition of sentence in criminal cases unless they have been recorded by electronic sound recording as provided in this subsection and the original records so taken have been certified by him and filed with the clerk as provided in this subsection. He shall also transcribe and certify such other parts of the record of proceedings as may be required by rule or order of court. Upon the request of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor, or of a judge of the court, the reporter or other individual designated to produce the record shall promptly transcribe the original records of the requested parts of the proceedings and attach to the transcript his official certificate, and deliver the same to the party or judge making the request....

The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had. No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record.

28 U.S.C. §753(b).

As argued correctly by the government, movant here provides no evidence that the trial transcripts contained any alterations or omissions. In fact, each contain the required court reporter's certification, which is *prima facie* evidence that the transcripts are true and correct. Absent any objective evidence to the contrary, movant has failed to establish here either deficient performance or prejudice pursuant to <u>Strickland</u> arising from counsel's failure to pursue this issue either post trial or on appeal. He is thus entitled to no relief on this claim.

In **claim 12,** movant asserts that he was denied effective assistance of appellate counsel, William Norris, Esquire, who

refused movant's assistance in perfecting the appeal, despite being advised by movant that the government had failed to present any forensic test of the firearm seized, and therefore should have investigated the issue surrounding the ownership of the firearm in order to present an effective appellate record for review. (Cv-DE#1:16). Movant is entitled to no relief on this claim for various reasons. First, he has not demonstrated here that Henderson was not the owner of the firearm. Second, the record establishes that the issue of the gun ownership was explored and the particulars were the subject of an ongoing investigation by the government. (Cr-DE#161:84; Cr-DE#56:18). Movant's suggestion that appellate counsel somehow affected movant's ability to lodge an objection either on appeal or in post-conviction proceedings, regarding the veracity of Jonas' statement that Henderson was the firearm owner, is wholly speculative and subject to summary dismissal. Moreover, appellate counsel cannot relitigate facts not preserved below or otherwise misrepresent facts on appeal. Here, counsel advocated on movant's behalf as borne out by the record that there was no physical evidence connecting movant to the firearm because movant's fingerprints were not found on the gun and the weapon was registered to Henderson. Notwithstanding, movant was not convicted of the firearm offense. The presence of the firearm was only an issue because it was used to enhance movant's guideline range. However, that too was of no consequence, because that enhancement did not factor into the final determination of movant's guideline range. See e.g., Gilbert v. United States, 640 F.3d 1293, 1320 (11th Cir. 2011)("A defendant who is convicted and then has the §4B1.1 career offender enhancement, or any other guideline enhancement applied in the calculation of his sentence, has not been convicted of being guilty of the enhancement."). Consequently movant cannot demonstrate deficient performance or prejudice in this regard. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987).

In **claim 15**, movant asserts that he was denied effective assistance of appellate counsel, where his lawyer failed to challenge on appeal the court's exclusion of critical defense evidence consisting of the only audio recording of the movant's conversation with codefendant Cox while in the back of the police vehicle. (Cv-DE#1:16). According to the movant, this recording would have contradicted and impeached Agent Bobbitt's hearsay testimony regarding the conversation he overheard between movant and Cox. (Cv-DE#5:20-21). He claims this evidence would have established that it was not until movant was with Cox in the patrol car that he learned for the first time what was taking place, including Cox's admission that movant had nothing to do with Cox's discussions with the CI. (Cv-DE#5:21). Movant explains that, in excluding the evidence, the court made factual findings based on altered transcripts, without first reviewing the audio recording, as the best evidence. (Cv-DE#5:22).

Movant cannot prevail on this claim because he has not provided a duly certified copy of the audio recording. His version of the audio recording has not been authenticated by a certified court reporter pursuant to federal law. Moreover, as set out by the government in its response, movant's trial counsel objected to the introduction of the statement made by Cox to the movant while inside the patrol car on the basis that it was hearsay. (Cr-DE#172:27-28). However, the objection was overruled on the basis of the excited utterance exception of the hearsay rule. (Id.). From the record it is evident that counsel did not want the discussion between movant and Cox, while in the police car, relating to "a brick or cut found inside the Ford Expedition" entered into evidence. (Cr-DE#161:23). Consequently, movant has not demonstrated either deficient performance or prejudice arising from appellate counsel's failure to pursue this issue further on appeal.

See <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987).

In **claim 21**, movant asserts that after he received and reviewed a complete copy of the transcripts in his case, he found numerous alterations thereto, and requests that the audio and/or stenographic notes be reviewed to correct the omissions. (Cv-DE#1:19). He claims appellate counsel's failure to have the transcripts reviewed and corrected denied him the right to effective appellate review. (Cv-DE#1:19). He also requests that the court conduct an in-camera review to determine whether the judge presiding over the proceeding showed bias for overlooking such a violation. (Cv-DE#1:19). In his supporting memorandum, movant relates specific instances where the typed transcripts differ from his recollection of the testimony during pretrial conferences and at trial, claiming that testimony was removed or otherwise not included in the transcriptions. (Cv-DE#5:33-39). Here, movant's representation as to the contents or lack thereof concerning the trial transcripts is wholly speculative and unsupported by the record. As will be recalled, the transcripts were certified as true and correct by the court stenographer. Movant has not demonstrated here that there was error in this regard. Appellate counsel was not ineffective for failing to pursue this specious claim on direct appeal.

To the extent he faults appellate counsel for failing to challenge the district court's purported bias, that claim also warrants no relief.

Title 28 U.S.C. §455 requires a federal judge to "disqualify her/himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §§ 455(a) & (b)(1) (2000). The purpose of §455(a) is to promote confidence in the judiciary by

91

avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 874, 865 (1988). Title 28 U.S.C. §455(b)(1) provides that a judge shall recuse himself where he has a personal bias or prejudice concerning a party. The standard for recusal under §455 is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality. See United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003), cert. den'd, 540 U.S. 1149 (2004); see also, United States v. Kelly, 888 F.2d 732, 744-45 (11th Cir.1989); Parker v. Connor Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988).

It is well established that "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." Liteky v. United States, 510 U.S. 540, 556 (1994); see also, Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001). Likewise, judicial remarks during the court of a proceeding--even those that are "critical or disapproving of, or even hostile to, counsel, the parties or their cases" -- will not ordinarily support a bias motion. Liteky, supra at 556. In Liteky, the Supreme Court explained that "a judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune." Id. An allegation of impartiality must be supported by some factual basis, and a motion for recusal cannot be based on unsupported, irrational or highly tenuous speculation. United States v. Cerceda, 188 F.3d 1291 (11th Cir. 1999). Absent a showing of bias, the movant cannot prevail on this claim. No such showing has been made here. None of the arguments previously raised in the underlying criminal case, nor in this collateral proceeding warrant recusal of the district judge. No due process violation has occurred, and the movant is

92

entitled to no relief on this claim. Thus, no deficient performance or prejudice has been established arising from appellate counsel's failure to preserve or otherwise pursue this issue. See <u>Matire v. Wainwright</u>, <u>supra</u>.

### iv. <u>Prosecutorial Misconduct Claims</u>

In **claims 3, 5, 7, 17, 18, and 20,** movant complains that the government engaged in prosecutorial misconduct during the trial proceedings. As will be demonstrated below, none of the arguments raised by movant warrant relief. No showing has been made that movant's trial was rendered fundamentally unfair due to the reasons set forth by movant in this §2255 proceeding.

In **claim 3**, movant asserts that his Fourth Amendment rights were violated when the government presented false information in an affidavit in support of its search warrant application. (Cv-DE#1:8). In his supporting memorandum, movant explains that he was denied effective assistance of appellate counsel, where his lawyer failed to assign as error that the government relied upon Agent Bobbitt's DEA-6 Affidavit (Cv-DE#4:Ex.D) of his interview of a jailhouse witness to support its application for a search warrant. (Cv-DE#1:8). He maintains Agent Bobbitt went through movant's cell phone contents before meeting Jonas and before obtaining the warrant. (Cv-DE#1:8). He further states the Bobbitt DEA-6 Affidavit was not signed by the agent's group supervisor, Sean Abbott, in direct violation of the DEA manual. (<u>Id</u>.). The argument raised herein are mere reiterations of the arguments raised in relation to claim one above and should be denied for the reasons set forth therein. Briefly, it will be recalled that the affidavit in support of the search warrant was not executed by Agent Bobbitt, but rather Special Agent Tonya R. Cook ("Agent Cook"). Whether Agent Cook

relied upon Agent Bobbitt's DEA-6 Report is unclear from the record. However, as previously related in relation to claim one, Agent Cook based her probable cause affidavit upon information derived from law enforcement personnel. The warrant was not supported by Agent Bobbitt's DEA-6 affidavit. Moreover, the substantive prosecutorial misconduct claim likewise fails for the reasons previously expressed herein. Movant has also not demonstrated deficient performance or prejudice arising from appellate counsel's failure to pursue this nonmeritorious issue on appeal.

In **claim 5**, movant asserts that the government introduced false evidence at trial that it was Jonas who informed them that movant's phone privileges at the FDC had been taken away for using another inmate's pin number to make calls. (Cv-DE#1:13; Cv-DE#5:9). The government committed prosecutorial misconduct by presenting this fraudulent information to the jury, in violation of movant's due process and equal protection rights. (Cv-DE#1:13). The gist of movant's argument appears to be, once again, that he was never housed with Jonas, and therefore, it was impossible for Jonas to relay any information to the government regarding the suspension of movant's phone privileges and the reasons underlying that suspension. (Cv-DE#5:9).

During defense counsel's cross examination of Agent Bobbitt, he was attempting to elicit confirmation that the information provided to the agent by Jonas was public knowledge, and thereby its reliability was questionable and should be discredited. Movant claims counsel should never have conceded to the entry of the following stipulation:

At the time that Agent Bobbitt met with Mr.

94

Jonas a/k/a Mr. Corvelle, Mr. Williams' [movant's] phone privileges had been taken away.

(Cr-DE#173:65). According to the movant, the foregoing stipulation served to verify Jonas' credibility, rather than challenge its veracity. (Cv-DE#1:12; Cv-DE#5:8-9). Here, counsel's strategy was to question the veracity of the testimonies of Jonas and Agent Bobbitt by calling attention to the fact that information regarding the suspension of movant's phone privileges were public knowledge. No showing has been made here that counsel's strategic decision in this regard was error. Counsel may well have been attempting to discredit the government witnesses, rather than conceding movant's guilt by admitting movant phone privileges had been taken away. See e.g. Messer v. Kemp, 760 F.2d 1080, 1091 n.6 (11th Cir. 1985)(only a complete concession of a defendant's guilt constitutes ineffective assistant). Here, the subject stipulation does not amount to a complete concession of guilt by defense counsel. To the contrary, counsel attempted to challenge the credibility of the government witnesses through strong cross-examination. Consequently, no prosecutorial misconduct, nor ineffective assistance, has been demonstrated to support relief on the bases set forth in this claim. He is thus entitled to no relief.

In **claim 7**, movant asserts the government impermissibly vouched for Jonas' credibility, by arguing that movant advised Jonas, the jailhouse witness, that the firearm seized was registered to Henderson, movant's cousin and drug supplier, without admitting into evidence the firearm's registration. (Cv-DE#1:13; Cv-DE#5:11). He also claims the government engaged in prosecutorial misconduct during opening statement, the presentation of their case-in-chief, and closing argument that it was Jonas who led them to the international phone number, which was inside found inside

95

the contents of movant's cellular phone. (Cv-DE#5:11). Movant also reiterates here that counsel was ineffective for failing to insure and/or otherwise introduce into evidence the firearm's registration. (Cv-DE#5:11). This claim is a mere reiteration of arguments raised in other claims previously addressed in this Report, and should therefore be denied for the reasons expressed therein.

As will be recalled, the prosecutorial misconduct claim arising from the improper vouching for its witness Jonas was raised and rejected on direct appeal. See United States v. Williams, 410 Fed.Appx. 272 (11th Cir. 2011); (Cr-DE#201). The movant has, therefore, not demonstrated a change in circumstance, sufficient to warrant relitigation of the claim. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975). Regardless, as noted correctly by the Eleventh Circuit, even if the government had improperly vouched for Jonas' credibility, there was more than sufficient evidence of movant's guilt. Williams v. United States, 410 Fed.Appx. at 275.

The issue concerning the recorded conversations between movant and his girlfriend regarding monies owed to him by Cunningham and his father for the sale of clothes was explored and brought before the jury during cross-examination and during movant's own testimony. See Cr-DE#162:6-8,15-18,26,60-61). The jury chose to reject movant's explanation in this regard, and instead believed the more than sufficient evidence presented by the government when it convicted movant as charged. The jury also heard testimony that movant had ten prior felony convictions, that he tried to avoid

paying for a public defender by hiding ownership of his truck, and that he used aliases to avoid incarceration. (Cr-DE#162:38-41,58-60). Also, in rebuttal, Agent Bobbitt explained that, based on his personal training and experience, the word "clothes" was often used as a code for drugs. (Cr-DE#162:84-86). For example, during one recorded conversation in this case revealed that a child ("Little Git") [later identified as Cunningham] stole $1,900 worth of clothes when movant's girlfriend turned her back on him. (Id.). Movant was heard telling his girlfriend that she should look in a cigarette box for the clothes. (Id.). Movant has not demonstrated here that such testimony was error. To the contrary, the jury weighed the credibility of the witnesses and chose to reject movant's testimony when it convicted him of the charged offenses.

Movant also apparently faults the government and defense counsel for failing to seek admission of the registration of the firearm into evidence. The issue surrounding the ownership of the gun was also explored at trial which revealed that it was registered to Henderson, but that the particulars thereof was part of an ongoing investigation. (Cr-DE#156:18, Cr-DE#161:84). Morever, during his own testimony, movant denied having previously seen the firearm, stating that the first time he saw it was in the courtroom that day. (Cr-DE#161:25). Movant denied having any knowledge that the firearm was in the Ford Expedition in April 2009, at the time of the Sam's Club transaction. Objective proof of the gun's ownership has not been presented here. Regardless, even if counsel had sought introduction of such evidence, it may have hurt, rather than aided movant because it could have imputed to movant knowledge of its existence, as well as, the marijuana found concealed in the Expedition. Rather, counsel attempted correctly to exclude introduction of the firearm, claiming movant had no knowledge of its existence nor of the fact that Cox was engaged in a drug deal.

(Cr-DE#154:38-39,42-43). Such argument, however, was unavailing as the court determined that the subject of the firearm and its admission was proper as tools of the drug trade. (Cr-DE#154:4-5,22,26-27,34; Cr-DE#171:27). As a result, defense counsel vigorously attempted to ameliorate the firearm's impact before the jury, establishing through cross-examination that movant was not the owner of the truck that contained the firearm, and that given the design of the center console, a passenger might now be aware of the hidden compartment. (Cr-DE#172:161-62). Counsel then attempted to demonstrate that there were four occupants of the vehicle, but only one firearm, thereby suggesting that with the exception of Cox, neither movant nor the remaining occupants of the vehicle were aware that there was a loaded firearm in the vehicle.[23] (Id.).

Under the totality of the circumstances presented here, movant has failed to demonstrate deficient performance or prejudice arising for the reasons set forth herein. Consequently, he is entitled to no relief on this claim.

In **claim 17**, movant asserts the government engaged in prosecutorial misconduct by allowing Agent Bobbitt to perjure himself in order to admit critical hearsay evidence. (Cv-DE#1:17; Cv-DE#5:27-28). This is a mere reiteration of arguments raised in relation to claims 14 and 27, and should be denied for the reasons expressed therein.

In **claim 18,** movant asserts the government engaged in prosecutorial misconduct when it permitted Agent Bobbitt to testify as to the contents of calls placed by movant to his family. (Cv-

---

[23]However, at trial, it was established that Henderson was driving the Expedition and movant was in the front, passenger seat, while Cox and Cunningham were sitting in the back of the vehicle. (Cr-DE#172:108-109).

DE#1:18). Movant further claims the government bolstered and vouched for Agent Bobbitt's credibility with evidence that was not before the court. (Cv-DE#5:30). Movant faults counsel for failing to object or otherwise seek a mistrial when the prosecution impermissibly vouched for Agent Bobbitt's credibility, and/or in the alternative for failing to call "Jit's father" to testify that the recorded conversation concerned cloths his son gave him. (Cv-DE#5:30). Movant has raised this claim both substantively and in the guise of ineffective assistance of counsel. As previously narrated in this Report, there is no evidence to suggest that the government unlawfully bolstered Agent Bobbitt's testimony, much less that it suborned perjury. He is thus entitled to no relief for the reasons set forth in relation to this claim.

In **claim 20,** movant asserts the government committed prosecutorial misconduct when it introduced and then vouched for the veracity of the testimonies of Jonas and Bobbitt concerning Jonas' interview and what movant purportedly told Jonas on April 8, 2009. (Cv-DE#1:18-19; Cv-DE#5:32-33). Again, this is a mere reiteration of arguments raised and addressed previously in this Report. No showing has been made that the government engaged in prosecutorial misconduct by introducing or otherwise vouching for the testimonies of Jonas and Bobbitt. Movant's trial was not rendered fundamentally unfair. Consequently, movant is entitled to no relief on this claim.

v. Trial Court Error Claims

In **claim 22**, movant asserts the trial court erred in instructing the jury as to the offense charged in Count 4 of the Indictment concerning constructive possession of MDMA. (Cv-DE#1:19; Cv-DE#5:39-41). This claim could have been, but also was not raised

on direct appeal. However, to the extent movant suggests counsel was ineffective for failing to preserve or otherwise raise the issue, in order to circumvent the bar, as will be demonstrated below, that claim warrants no relief. Consequently, since no showing of deficiency or prejudice has been established under Strickland, the movant's claim is barred and/or otherwise without merit.

In order to "convict a defendant of possession with intent to distribute controlled substances, the Government must prove that he or she possessed drugs with the intent to distribute them. [...] The [G]overnment may prove each of these elements with direct or circumstantial evidence." United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005) (signals omitted). "The government may satisfy the 'possession' prong by showing either actual or constructive possession. To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the thing allegedly possessed." United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). On the other hand, "[c]onstructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed." Id. The government must also prove that movant was more than merely present in the car containing the contraband. Id.

Moreover, some nexus is required to exist between a defendant and the contraband, and a defendant must have knowledge of the substance's existence to exercise control or dominion over it. Holmes v. Kucynda, 321 F.3d 1069, 1080 (11th Cir. 2003). Evidence of a "consciousness of guilt," such as nervousness, inconsistent statements or stories, and anxiousness regarding the search, is sufficient for a jury to infer a defendant's knowledge of the

controlled substances found in a car. See United States v. Stanley, 24 F.3d 1314, 1320, n. 50 (11th Cir. 1994) (citations omitted).

Here, the court's instruction to the jury, specifically no. 14, provided:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may also have a sole possession or joint possession.
>
> A person who knowingly has direct physical control of something is then in actual possession of it.
>
> A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in constructive possession of it.
>
> If one person alone has possession of something, that possession is sole. If two or more persons share possession, such possession is joint.
>
> Whenever the word "possession" has been used in these instructions it includes constructive as well as actual possession, and also joint as well as sole possession.

(Cr-DE:79:15).

Consistent with this instruction, the Government argued the application of both constructive and actual possession. (See Cr-DE#180:28). On the record before this court, no showing has been made that the instruction was unlawful or that the jury was unable to follow the instruction. Thus, no argument on this basis would have been successful. Consequently, movant is entitled to no relief on this claim.

Alternatively, movant also claims that the court erred in instructing the jury that it need not prove the movant had actual

101

knowledge of the particular drugs involved in the offenses, so long as he had knowledge that he was dealing with a controlled substance. (Cv-DE#5:40). This precise argument has been specifically rejected by the appellate court. "[I]t is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance." United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990)(citing United States v. Lewis, 676 F.2d 508, 512 (11th Cir. 1982); see also United States v. Restrepo-Granda, 575 F.2d 524, 527 (5th Cir. 1978); United States v. Zapata, 497 F.2d 95, 98 n.7 (5th Cir. 1974)). Subjective knowledge of the quantity of a drug is "unrequired for a defendant to receive a mandatory minimum sentence under Section 841(b)(1)." United States v. Holmes, 838 F.2d 1175, 1178 (11th Cir. 1988).

In order to be convicted of possession with intent to distribute MDMA, a defendant must have knowledge that he was dealing with a controlled substance, although he need not know the particular drug involved or the quantity. Under 21 U.S.C. Section 802(6), "[t]he term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [ 21 U.S.C. § 812]." Pursuant to 21 U.S.C. Section 812(b)(1)-(5), whether a substance is a controlled substance is determined by a drug's potential for abuse; whether the drug has a currently accepted medical use in treatment in the United States; the degree to which the drug may lead to physical or psychological dependence; and whether there is a lack of accepted safety for use of the drug under medical supervision.

Here, the jury was properly instructed, and returned a general verdict, finding movant guilty as charged, without specifying the

quantity of drugs. (Cr-DE#155:19-21). The Indictment in this case charged movant with conspiracy to possess with the intent to distribute MDMA, (3, 4-Methylenedioxymethamphetamine) commonly known as "ecstacy," in violation of 21 U.S.C. §§841(a)(1), (b)(1)(C) and 846 (Count 1); possession with the intent to distribute MDMA, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count 4); and attempted possession with the intent to distribute a mixture and substance containing a detectable amount of MDMA, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. §2 (Count 5). (Cr-DE#17). It appears from the record that a verdict form was prepared, but it is not docketed on CM/ECF. However, from the transcript, as noted above, the jury convicted as charged. The movant's challenge on this basis also fails. There was no error in the instructions, much less one that rendered the jury's verdict fundamentally unfair. No constitutional violation has been demonstrated. Movant is entitled to no relief on this claim.

In **claim 23**, movant asserts the trial judge showed bias throughout the proceedings by favoring the prosecution in her rulings pretrial and at trial, and in her instructions to the jury. (Cv-DE#1:20; Cv-DE#5:41-52). This is a mere reiteration of the arguments previously raised in this Report, and should therefore be denied for the reasons expressed therein. Here, movant has failed to demonstrate that the judge was biased throughout the proceedings. Further, "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." Liteky v. United States, 510 U.S. 540, 556 (1994); see also, Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001). Although this is raised as an independent claim which could have and was not raised on direct appeal, if he means to suggest counsel was ineffective for failing to pursue the claim either before the trial court or on

appeal, as cause to circumvent the bar, he is entitled to no relief on that basis. Movant has not demonstrated deficient performance, much less prejudice under <u>Strickland</u> arising from counsel's failure to pursue this nonmeritorious claim.

### vi. <u>Miscellaneous Claim</u>

In **claim 26**, movant asserts that he was denied his right to a fair and impartial jury. (Cv-DE#1:21-22). According to the movant, juror Olivia Rothstein ("Juror Olivia") failed to disclose that she and her son Scott Rothstein, were friends with the district judge presiding over the case and the prosecutor. (Cv-DE#5:56). Movant also claims this juror failed to disclose that she had legal training and knowledge, having helped her son with his law studies. (<u>Id</u>.). Regardless of whether the juror failed to disclose her friendship with the judge, or the fact that she had legal training or knowledge, does not establish that movant's right to a fair and impartial jury was compromised. In support thereof, movant attaches a copy of Rothstein's juror questionnaire, and an Affidavit from Terrance Scott ("Scott"), a convicted felon, housed at the local detention center. (Cv-DE#4:Exs.T,Z,1D). According to Scott, he was informed by former attorney, Scott Rothstein ("Rothstein"), that he had assisted movant in filling out some documents, and had told movant that he and his mother were friends with the judge that presided over movant's case. (Cv-DE#4:Ex.T). Movant suggests that Rothstein's mother, Juror Olivia, was biased given the foregoing and the fact that she failed to disclose this information during voir dire.

First, review of the questionnaire completed by Juror Olivia does not reflect that she answered any of the questions untruthfully or incompletely. (Cv-DE#4:Ex.Z). The questions did not

ask whether she knew the presiding judge or prosecutor. In court, during *voir dire*, it is true that the venire panel was questioned whether they recognized prosecutor Christine Maxwell or Tony Gonzalez, and none of the venire members indicated that they did. (Cv-DE#171:46.68). This alone does not provide proof, nor has movant demonstrated here with objective evidence, that the subject juror lied by failing to state that she knew or otherwise recognized AUSA Gonzalez. Regarding her legal knowledge and the fact that her son was an attorney, Juror Olivia disclosed this information in her questionnaire, and was questioned about that during *voir dire*. (Cr-DE#171:128). She denied that this would affect her ability to sit as a juror in this case. (Id.).

The Constitution affords defendants the right to an impartial jury and judge. Parker v. Gladden, 385 U.S. 363, 364, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (*per curiam*) (impartial jury); Tumey v. State of Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927) (impartial judge). Due process requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

In this case, the movant has woefully failed to establish that Juror Olivia was incapable of being fair and impartial. Even if the facts as alleged by movant are true, no showing has been made here that this juror, or for that matter, any other juror, failed to adhere to the court's instructions, or otherwise rendered movant's trial fundamentally fair. See Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) ("jurors are presumed to follow the court's instructions" and a court should assume jurors can put aside any

bias to follow those instructions). Consequently, movant cannot prevail on the argument raised in this claim. No deficient performance or prejudice has been demonstrated to warrant the relief requested, and as a result, this claim is barred because it could have been, but was not raised on direct appeal. It also substantively fails on the merits.

## VI. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." See Fed.R.App.P. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. See 28 U.S.C. §2255 Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and

106

quotation marks omitted); <u>see</u> <u>also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473,
484 (2000); <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001).
After review of the record in this case, the Court finds the movant
has not demonstrated that he has been denied a constitutional right
or that the issue is reasonably debatable. <u>See</u> <u>Slack</u>, 529 U.S. at
485; <u>Edwards v. United States</u>, 114 F.3d 1083, 1084 (11th Cir. 1997).
Consequently, issuance of a certificate of appealability is not
warranted and should be denied int his case. Notwithstanding, if
movant does not agree, he may bring this argument to the attention
of the district judge in objections.

### VII. <u>Conclusion</u>

It is therefore recommended that this motion to vacate be
denied; that a certificate of appealability be denied; and, the
case closed.

Objections to this report may be filed with the District Judge
within fourteen days of receipt of a copy of the report.

Signed this 6th day of August, 2013.


_____
UNITED STATES MAGISTRATE JUDGE


cc:  Kenneth White, Esquire
     Attorney for Movant
     2937 S.W. 27th Avenue, Suite 101
     Miami, FL 33133
     Phone: 305/442-4277
     Fax: 305/446-6150
     e-mail: acquit777@aol.com

Cristina V. Maxwell, AUSA
U.S. Attorney's Office
11200 N.W. 20th Street
Miami, FL 33172
Phone: 305/715-7641/7654
Fax: 305/715-7639
e-mail: Cristina.Maxwell@usdoj.gov