**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 12-21780-CIV-SEITZ

BUD PRATT WILLIAMS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**ORDER DENYING RECONSIDERATION**

    This matter is before the Court on Petitioner Bud Pratt Williams's motion for reconsideration [DE-83] of the Court's order [DE-81] denying his petition. Reconsideration "is an extraordinary remedy to be employed sparingly" and granted only in very limited circumstances. *Bautista v. Cruise Ships Catering and Service Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2004), *aff'd sub nom. Bautista v. Cruise Ships Catering*, 120 F. App'x 786 (11th Cir. 2004). Most importantly, a movant arguing that reconsideration is necessary due to clear error or a need to prevent manifest injustice "must do more than simply restate his or her previous arguments." *Campero USA Corp v. ADS Foodservice LLC*, 916 F. Supp. 2d 1284, 1292-93 (S.D. Fla. 2012). The Court has reviewed Williams's motion and the relevant portions of the docket. Because Williams simply restates his previous arguments, his motion is denied.

    As to claim 1, Williams repeats his previous perjury allegations concerning phones seized from his person incident to arrest and assumes that the jury would have agreed with him if his attorney had made these allegations during trial. These arguments were already addressed and need not be addressed again.

    As to claim 2, Williams argues that there was no way for him to obtain affidavits from inmates describing what their trial testimony would have been if they had been called as witnesses. But he still has provided nothing but his own assertions to suggest

what their testimony might have been, which falls far short of the necessary showing to establish that he was prejudiced by his counsel's failure to call these witnesses.

As to claim 3, Williams argues that any alleged false statement in a warrant application affidavit necessarily taints the entire affidavit, ignoring *Franks*'s requirement that the false statement be necessary for finding probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978).

As to claim 4, Williams simply reiterates his disagreements with his counsel's strategy for discrediting the jailhouse informant. As to claim 5, Williams appears to argue that the government committed perjury by making a minor inaccuracy in a stipulation about the timing of Agent Bobbitt's meetings with Jonas. These arguments were already addressed and need not be addressed again.

As to claim 6, Williams simply reiterates his disagreements with his counsel's strategy for discrediting the jailhouse informant and for minimizing the significance of the gun found in the Expedition's center console. He argues that claim 7 differs from the arguments rejected on direct review but fails to specify how they differ. These arguments were already addressed and need not be addressed again.[1]

As to claim 8, Williams repeats his earlier allegations about a conflict of interest and reiterates his disagreements with his counsel's strategy concerning whether to call his co-defendant as a witness. These arguments were already addressed and need not be addressed again.

---

[1] Although unrelated to Williams's motion for reconsideration, the Court notes one error in its characterization of Agent Bobbitt's trial testimony with regard to this claim. Agent Bobbitt did not testify that the gun was registered to Henderson; rather, he testified that he had checked the gun's registration and thereby corroborated his belief that the gun belonged to Henderson. (*Compare* [DE-81 at 20] *with* [Cr-DE-173 at 60–62].)

As to claim 9, Williams repeats his earlier arguments about matters that he raised in claims 1–7 and that were addressed in relation to those claims. These arguments were already addressed and need not be addressed again.

As to claim 10, Williams argues that he was prejudiced by the career-offender enhancement because it rendered him ineligible for sentence reductions in the future. However, this is not a constitutional error and it is insufficient to show prejudice for purposes of collateral review.

As to claim 11, Williams fails to show how his appeal was prejudiced by the alleged omission from the trial transcript of Williams's testimony that he did not know Jonas. Williams suggests that when he testified that he did not know Jonas, that triggered a duty to determine if his confession to Jonas had been voluntary. But there was nothing to suggest that there had been any involuntary confession. Rather, Williams testified that he did not know Jonas and never said anything to him at all, which the jury was free to believe or disbelieve.

As to claim 12, Williams simply reiterates his disagreements with his appellate counsel's strategy concerning whether to appeal every evidentiary ruling. As to claim 13, Williams repeats his earlier speculations about the authenticity of certain recorded phone calls, but again provides no reason to doubt their authenticity. These arguments were already addressed and need not be addressed again.

As to claim 14, Williams reiterates his disagreements with his trial counsel's evidentiary strategy concerning a police-car recording of a conversation between Williams and Cox. He also ignores that his counsel objected early in the trial to any references to the cut in the back of the Expedition, specifically referencing this very recording. [Cr-DE-171 at 18.]

As to claim 15, Williams simply repeats his previous arguments speculating about prejudice from the exclusion of the police-car recording. As to claim 16, Williams

reiterates his disagreements with his counsel's strategy concerning whether to call his co-defendant as a witness, except that he couches his arguments in terms of "counsel's duty as an officer of the court." These arguments were already addressed and need not be addressed again.

As to claims 17 and 18, Williams reiterates his earlier perjury accusations, which are both based solely on inconsistencies in trial testimony that the jury was fully able to evaluate. These allegations were already addressed and need not be addressed again.

As to claim 19, Williams reiterates his earlier arguments about his counsel's supposed failure to "present[] . . . to the jury" a surveillance video that was actually admitted into evidence. As to claim 20, Williams reiterates his earlier arguments about the inadequacy of Agent Bobbitt's testimony about the location of a surveillance team. These arguments were already addressed and need not be addressed again.

As to claim 21, Williams reiterates his earlier arguments about alleged omissions from the trial transcript but again fails to suggest how his appeal could have been prejudiced by any of these alleged omissions. These arguments were already addressed and need not be addressed again.

As to claim 22, Williams reiterates his earlier arguments about the jury instructions, which need not be addressed again. Because Count 4 charged him with violating both 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, the jury instructions correctly characterized Count 4 as charging him with aiding and abetting. [Cr-DE-17 at 3; Cr-DE-79 at 9.]

As to claim 23, Williams reiterates his earlier allegations of judicial bias based on evidentiary rulings, including those concerning how Williams's co-Defendant might be impeached if he testified. These arguments were already addressed and need not be addressed again.

As to claim 24, Williams argues that evidence of Cunningham's mental impairment was relevant to the admissibility of the recording of a May 28th call between Williams and Cunningham. Williams argues that the call included references to statements that Cunningham made to a CI and that evidence of Cunningham's mental impairment would have shown that these statements were made during an impermissible interrogation by the CI, rendering inadmissible the whole recording of the May 28th call. This argument fails because Cunningham's statements to the CI were not admitted. The May 28th call was between Williams and Cunningham, and it contained Williams's statements berating Cunningham for talking to the CI. Evidence of a mental impairment would have had no effect on the admissibility of the May 28th call.

As to claim 25, Williams reiterates his earlier argument that Robert Christie testified as an expert witness rather than a lay witness because a layman could not have had Christie's experience with cell towers. This argument disregards that Christie's testimony was based on his personal experience rather than on "scientific, technical, or other specialized knowledge," so he could testify as a lay witness under Fed. R. Evid. 701.

As to claim 26, Williams repeats his previous speculations about improper relationships between a juror and the prosecution and trial judge. These allegations were already addressed and need not be addressed again.

As to claim 27, Williams argues that his claim pertained specifically to his co-Defendant's statement to Williams during their arrest that they had been "set . . . up," rather than to other hearsay statements as described in the Court's order. Williams argues that this specific statement was not in furtherance of a conspiracy, and so its admission violated the Confrontation Clause because his co-Defendant did not testify. Accepting that this was an erroneous admission and that counsel should have provided the correct grounds to advise the Court to exclude it, Williams cannot demonstrate a

reasonable probability that its admission was so prejudicial that the jury would otherwise have found him not guilty.

As to claim 28, Williams argues that although the Court only considered his ineffective-assistance claim in relation to the pursuit of a plea deal, his claim also alleged other types of misadvice. However, in Williams's original petition, he alleged that the alleged misadvice mattered precisely because he would have taken a plea deal if his counsel hadn't allegedly misadviced him about the strength of this case. Except insofar as is addressed in his other claims, Williams has presented no other explanation for how he was prejudiced by this alleged misadvice.

Williams also moves for an extension of his deadline to appeal because he is in the middle of a prisoner transfer. The Court previously denied Williams a certificate of appealability. However, the Court will extend his deadline to file a notice of appeal in order to seek a certificate of appealability directly from the Eleventh Circuit because he has shown good cause under 28 U.S.C. § 2107(c). Accordingly, it is hereby

ORDERED that

1) Williams's motion for reconsideration [DE-83] is DENIED.
2) Williams's motion for an extension [DE-84] is GRANTED. Williams may file a notice of appeal as to the Court's order denying his petition [DE-81] by September 8, 2015. This is not to be construed as a certificate of appealability.

DONE AND ORDERED in Miami, Florida, this 17th day of August, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE